UNITED STATES *ex rel.* McLEAN *v.* VILAS.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued November 21, 22, 1887. — Decided January 9, 1888.

Upon the statutes of the United States which are considered at length in the opinion of the court, *Held:* That no obligation rests upon the Postmaster General to readjust the salaries of postmasters oftener than once in two years; that such readjustment, when it takes place, establishes the amount of the salary prospectively for two years; but that a discretion rests with the Postmaster General to make a more frequent readjustment, when cases of hardship seem to require it.

PETITION FOR MANDAMUS. Petition dismissed. The petitioner sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Samuel F. Phillips* for the petitioner. *Mr. H. Spalding* was with him on the brief.

*Mr. Assistant Attorney General Howard,* and *Mr. Assistant Attorney General Bryant* opposing. *Mr. Attorney General* was with them on the brief.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the District of Columbia.

In the case of *United States v. McLean,* 95 U. S. 750, will be found the report of the decision of this court in an action instituted by the present plaintiff in error against the United States. The appeal was taken from a judgment of the Court of Claims in favor of McLean for the sum of $569.50, for compensation as deputy postmaster at Florence, Kansas, from April 14, 1871, to July 1, 1872, which was rendered on the ground that he was entitled to a readjustment of his salary by the Postmaster General for the period between those dates, and that if such readjustment had been made his salary would

have been increased by the amount for which the court rendered judgment in his favor.

This court, however, held on the appeal that the Court of Claims could not perform the duty of readjusting the salary under the acts which conferred that power on the Postmaster General, and that there was no legal liability against the United States for the amount claimed by him until that officer had readjusted the salary in accordance with those acts of Congress. In its opinion the court suggested that if the executive officer failed to do his duty in that respect he might be constrained by a mandamus to perform it.

Acting upon this suggestion, and under the act of Congress of March 3, 1883, which authorized and directed the Postmaster General, in proper cases, to make readjustments of salaries which should act retrospectively, Mr. McLean made a demand upon that officer — indeed, he made two demands, one upon Postmaster General Gresham, and the other upon Postmaster General Vilas.— for such a readjustment. Both of these officers declining to comply with his demand, he, on the 4th day of August, 1886, commenced the present suit in the Supreme Court of the District of Columbia by filing therein his petition for a writ of mandamus.

This petition alleges that McLean served as a postmaster of the fifth class at Florence, Kansas, from or prior to April 14, 1871, to June 30, 1872, and made full returns of the business and receipts of his office on the last day of each quarter to the officer designated by law to receive such returns; that upon the returns made on the 30th of June, 1871, he was allowed and paid a salary of $1.48, and that if paid in commissions upon said returns, under the act of 1854, he would have received $89.12. He further declares that upon all the returns made by him between July 1, 1871, and July 1, 1872, he was allowed and paid a salary of $7.00, and that if he had been paid in commissions upon said returns, under the act of 1854, he would have received $568.64. He also alleges that the Postmaster General refused to readjust his salary as such postmaster during his said term of service, whereby he had been unable to recover his just compensation in the Court of Claims;

and further, that under the act of March 3, 1883, c. 119, 22 Stat. 487, he did, in writing, present his application for such readjustment to William F. Vilas, Postmaster General, who refused to readjust his salary for the term of service between April 14, 1871, and July 1, 1872, or for any part of that term; and, therefore, he prays the court for a writ of mandamus to compel this readjustment.

An amended petition was filed in the lower court, a demurrer to the petition as thus amended was overruled, and the respondent then filed pleas to the jurisdiction of the court to issue a mandamus in the case. He also filed a very elaborate answer, in which many defences were set out, and among others a denial that by a true construction of the statutes by which he was governed in the matter of the readjustment of salaries of postmasters, the plaintiff is now or ever was entitled to such a readjustment. The court below, having issued a rule to show cause why a mandamus should not issue, to which these defences on the part of the Postmaster General were set up, on final hearing decided in his favor, and discharged the rule. To that judgment the present writ of error is directed.

Before proceeding to examine with minuteness the various statutes on which the arguments turn, it may be well to state in condensed shape the two propositions relied on by the contesting parties growing out of the construction of these statutes.

Counsel for the defendant assert the proposition, that, under the statutes on this subject, which will hereafter be referred to, there was no obligation resting upon the Postmaster General to readjust the salaries of these officers oftener than once in two years; that such readjustment, when it took place, could only establish the amount of the salary for two years thereafter, and that no such readjustment could be made unless there were quarterly returns for two years preceding such readjustment on which it could be based.

Counsel for the plaintiff, on the other hand, insist that whenever, upon the filing of any quarterly return by a postmaster of the third, fourth, or fifth class, it is shown that the salary

allowed is ten per cent less than it would be on the basis of commissions under the act of 1854, then the Postmaster General shall review and readjust his salary under the provisions of the act, and that this duty devolves upon him at the end of every quarter when the return of the postmaster for that quarter shows this condition of affairs; so that he is compelled, by this construction of the law, to make this readjustment four times a year if the returns justify it, instead of once every two years, as the counsel for the Postmaster General contend.

From the beginning of the government down to the year 1864 postmasters were paid by commissions on the receipts at their offices, ascertained by their quarterly returns of the moneys received for postage, stamps, box rents, &c. Until 1836 all postmasters were appointed by the Postmaster General, and were thence called deputy postmasters. So much of the statute of June 22, 1854, as is pertinent to the consideration of this case, is here inserted:

"That in place of the compensation now allowed deputy postmasters the Postmaster General be, and he is hereby, authorized to allow them commissions at the following rates on the postage collected at their respective offices, in each quarter of the year, and in due proportion for any period less than a quarter, viz. :

"On any sum not exceeding one hundred dollars, sixty per cent; but any postmaster at whose office the mail is to arrive regularly between the hours of nine o'clock at night and five o'clock in the morning, may be allowed seventy per cent on the first hundred dollars;

"On any sum over and above one hundred dollars, and not exceeding four hundred dollars, fifty per cent;

"On any sum over and above four hundred dollars, but not exceeding twenty-four hundred dollars, forty per cent;

"And on all sums over twenty-four hundred dollars, fifteen per cent." 10 Stat. c. 61, 298.

In 1864 Congress changed this system of allowing commissions on the amounts received by the postmasters as their compensation, and determined that it should be a fixed salary in lieu of such commissions, and also divided these officials into

five classes.   So much of this statute as is necessary to be con- .
sidered in this connection is here inserted :

"SEC. 1. That the annual compensation of postmasters shall
be at a fixed salary, in lieu of commissions, to be divided into
five classes, exclusive of the postmaster of the city of New
York.

" Postmasters of the first class shall receive not more than
four thousand dollars, nor less than three thousand dollars ;

" Postmasters of the second class shall receive less than
three thousand dollars, and not less than two thousand dollars ;

" Postmasters of the third class shall receive less than two
thousand dollars, and not less than one thousand dollars ;

" Postmasters of the fourth class shall receive less than one
thousand dollars, and not less than one hundred dollars ;

" Postmasters of the fifth class shall receive less than one
hundred dollars.

" The compensation of the postmaster of New York shall be
six thousand dollars per annum, to take effect on the first day
of July, eighteen hundred and sixty-four ; and the compensa-
tion of postmasters of the several classes aforesaid shall be
established by the Postmaster General under the rules herein-
after provided.

" Whenever the compensation of postmasters of the several
offices, (except the office of New York,) for the two consec-
utive years next preceding the first day of July, eighteen hun-
dred and sixty-four, shall have amounted to an average annual
sum not less than three thousand dollars, such offices shall be
assigned to the first class ; whenever it shall have amounted
to less than three thousand dollars, but not less than two
thousand dollars, such offices shall be assigned to the second
class ; whenever it shall have amounted to less than two thou-
sand dollars, but not less than one thousand dollars, such
offices shall be assigned to the third class ; whenever it shall
have amounted to less than one thousand dollars, but not less
than one hundred dollars, such offices shall be assigned to the
fourth class ; and whenever it shall have amounted to less than
one hundred dollars, such offices shall be assigned to the fifth
class.

" To offices of the first, second, and third classes shall be severally assigned salaries, in even hundreds of dollars, as nearly as practicable in amount the same as, but not exceeding, the average compensation of the postmasters for the two years next preceding; and to offices of the fourth class shall be assigned severally salaries, in even tens of dollars, as nearly as practicable in amount the same as, but not exceeding, such average compensation for the two years next preceding; and to offices of the fifth class shall be severally assigned salaries, in even dollars, as nearly as practicable in amount the same as, but not exceeding, such average compensation for the two years next preceding.

" Whenever returns showing the average of annual compensation of postmasters for the two years next preceding the first day of July, eighteen hundred and sixty-four, shall not have been received at the Post Office Department at the time of adjustment, the same may be estimated by the Postmaster General for the purpose of adjusting the salaries of postmasters herein provided for.

" And it shall be the duty of the Auditor of the Treasury for the Post Office Department to obtain from postmasters their quarterly accounts with the vouchers necessary to a correct adjustment thereof, and to report to the Postmaster General all failures of postmasters to render such returns within a proper period after the close of each quarter.

" SEC. 2.    That the Postmaster General shall review once in two years, and in special cases, upon satisfactory representation, as much oftener as he may deem expedient, and readjust, on the basis of the preceding section, the salary assigned by him to any office; but any change made in such salary shall not take effect until the first day of the quarter next following such order, and all orders made assigning or changing salaries shall be made in writing, and recorded in his journal, and notified to the Auditor for the Post Office Department.

" SEC. 3.    That salaries of the first, second, and third classes shall be adjusted to take effect on the first day of July, eighteen hundred and sixty-four, and of the fourth and fifth classes at the same time or at the commencement of a quarter as nearly as practicable thereafter.

"Sec. 4. That at offices which have not been established for two years prior to the first of July, eighteen hundred and sixty-four, the salary may be adjusted upon a satisfactory return by the postmaster of the receipts, expenditures, and business of his office." 13 Stat. 335, c. 197.

By the act of June 12, 1866, this act of 1864 was amended by adding the following proviso to its second section :

"Provided, That when the quarterly returns of any postmaster of the third, fourth, or fifth class show that the salary allowed is ten per centum less than it would be on the basis of commissions under the act of 1854, fixing compensation, then the Postmaster General shall review and readjust under the provisions of said section." 14 Stat. 60, c. 114, § 8.

The law stood on these enactments during the period of McLean's service, except that by the consolidating statute of June 8, 1872, 17 Stat. 283, c. 335, the readjustment of salaries was only obligatory when the compensation was twenty per cent, instead of ten per cent, less than it would have been under the act of 1854. Its language is as follows:

"Sec. 82. That the salaries of postmasters shall be readjusted by the Postmaster General once in two years, and in special cases as much oftener as he may deem expedient ; and when the quarterly returns of any postmaster of the third, fourth, or fifth class show that the salary allowed is twenty per centum less than it would be on a basis of commission, the Postmaster General shall readjust the same."

The act of March 3, 1883, which authorized and directed the Postmaster General to readjust the salaries of all postmasters and late postmasters of the third, fourth, and fifth classes, is as follows:

"That the Postmaster General be, and he is hereby, authorized and directed to readjust the salaries of all postmasters and late postmasters of the, third, fourth, and fifth classes, under the classification provided for in the act of July 1, 1864, whose salaries have not heretofore been readjusted under the terms of § 8 of the act of June 12, 1866, who made sworn returns of receipts and business for readjustment of salary to the Postmaster General, the First Assistant Postmaster Gen-

eral, or the Third Assistant Postmaster General, or who made quarterly returns in conformity to the then existing laws, and regulations, showing that the salary allowed was ten per centum less than it would have been upon the basis of commissions under the act of 1854; such readjustments to be made in accordance with the mode presented in § 8 of the act of June 12, 1866, and to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business, or quarterly returns, were made : Provided, That every readjustment of salary under this act shall be upon a written application, signed by the postmaster or late postmaster, or legal representative, entitled to said readjustment; and that each payment made shall be by warrant or check on the Treasurer or some assistant treasurer of the United States, made payable to the order of said applicant, and forwarded by mail to him at the post-office within whose delivery he resides, and which address shall be set forth in the application above provided for." 22 Stat. c. 119, 487.

With the answer of the Postmaster General are presented as exhibits two opinions of Attorney General Brewster, given in response to requests of the Postmaster General; also an opinion by the Assistant Attorney General for the Post Office Department, and the opinion of Postmaster General Gresham in a letter to Hon. Frank Hatton, First Assistant Postmaster General. All of these sustain the proposition already stated on behalf of the defendant.

These, with the argument of counsel, and the briefs now before us, cover the whole field of controversy. Many objections are taken by the counsel for the defendant which would be worthy of serious consideration if it were necessary to decide them, but as we agree with the Postmaster General in such a construction of these statutes as shows that they imposed no obligation upon him to make the readjustment of salary claimed by the plaintiff, and as this goes to the merits of the controversy, we prefer to rest the case on this point without any consideration of the others.

Upon a very careful examination of these statutes we are forced to the conclusion that the legislature in these enact-

ments did not contemplate a readjustment of the salaries of any of these officers oftener than once in two years, as a legal duty or obligation upon the part of the Postmaster General. It is true, undoubtedly, that many cases of hardship might arise for want of a more frequent adjustment. In towns where the population and business grew very rapidly an adjustment made at a time when the compensation would amount to three or four dollars a quarter might be very inadequate, when, if readjusted according to the later returns, the salary might amount to six or eight hundred dollars per annum, while the officer, if he served at all, would be compelled to serve at the inconsiderable compensation originally established.

The answer to this suggestion is, that the Postmaster General was expressly authorized, within his discretion, to make readjustments in special cases, upon satisfactory representations, as much as he might deem expedient. The very fact that this discretion was left to him in these special cases, and that the rule which should govern him in the exercise of the power was left to his sense of right and propriety, is an argument against the necessity of any more frequent readjustment than once in two years, as a positive duty arising from a proper construction of the statutes.

The act of 1864, which abolished the system of compensation by a fixed commission on all the receipts at the post-offices, evidently adopted a principle of establishing a salary for two years, which was to be fixed by a relation in each of the five classes of postmasters, to the amount received at those offices. It enacts that the compensation of the postmasters of the several offices, except the office at New York, for the two consecutive years next preceding the first day of July, 1864, shall be the basis at which the salaries of those offices shall be fixed for the next two years. The second section declares that the Postmaster General shall review once in two years, and, in special cases, upon satisfactory representation, as much oftener as he may deem expedient, and readjust, on the basis of the preceding section and of the rates there fixed, the salary assigned by him to any office; and that any change made in

such salary shall not take effect until the first day of the quarter next following such order.

Here is a very clear statement that the salaries of these offices are to be fixed once in two years, that this shall be done by the Postmaster General, and that it shall be based upon the receipts at those offices for the two consecutive years next preceding the time when it is made. The manifest purpose of this statute is, first, to change the compensation of the postmaster from a mere fixed commission on the receipts of his office to a regular salary; second, that this salary shall be fixed for a period of two years prospectively; and third, that, owing to the varying amount of receipts at post-offices, which may rapidly grow, the Postmaster General is required to make, on the basis already given, a readjustment once in two years. If, as already said, cases of great hardship, where there is a sudden increase of business, seem to demand a more frequent readjustment, the power to do this is left with the Postmaster General, but rests entirely in his discretion.

The statutory provision on which it is asserted that a change of this rule rests, so that it is the duty of the Postmaster General to make a readjustment at the end of any quarter where the return from an office shows that the salary allowed is ten per cent less than it would be on the basis of the commissions under the act of 1854, is the proviso found in section eight of the act of 1866, which reads as follows : " Provided, That when the quarterly returns of any postmaster of the third, fourth, or fifth class show that the salary allowed is ten per centum less than it would be on the basis of commissions under the act of 1854 fixing compensation, then the Postmaster General shall review and readjust under the provision of said section."

What quarterly returns are here meant, as showing that the salary is ten per cent less than the commissions under the act of 1854? The argument of counsel is, that when any one quarterly return shall show this condition of affairs, the Postmaster General, on the request of the postmaster, must make a readjustment, but such is not the language of the statute. The expression used is, " when the quarterly returns " shall show this, and inasmuch as the law had already established

that readjustments must be made on the basis of the quarterly returns for two years, it is reasonable to suppose that that was the meaning of Congress in this proviso.

To require the Postmaster General, who alone can make these readjustments, to act upon every case where the last quarterly return shows a case for a readjustment, would be imposing a duty which it would be impossible for one man to perform, and which in itself would be an inconvenience not justified by any benefit to the incumbents of such offices. This compensation might vacillate every quarter. A salary might be increased one quarter, and it might be proper to diminish it the next; so that, instead of having a salary, or yearly compensation, as we think the spirit of all the statutes requires, and as it must be prospective, it would be in the end paying a man for a future quarter a compensation which he had earned on a past quarter. The whole spirit of the statutes seems to imply that the returns for the past two years are to be taken as the best conjectural basis that can be obtained for fixing the salary for two years in the future. Before we can adopt such a construction, therefore, as is contended for by plaintiff's counsel, words imperatively declaring such a proposition should be found in the statutes.

The language which is used in the proviso, instead of declaring as could easily have been done, that the return of every quarter shall be the basis upon which to determine the compensation of the officer for the next succeeding quarter, is "that when the quarterly returns of any postmaster" of the classes specified "show that the salary allowed is ten per centum less than it would be on the basis of commissions under the act of 1854, fixing compensation, then the Postmaster General shall review and readjust the salary under the provisions of said section." The provisions of that section, as we have already seen, direct the Postmaster General to review and readjust the salaries of postmasters once in two years, except in special cases, upon the basis of the preceding section, namely, § 2 of the act of 1864.

That basis of the preceding section is the returns for the two years consecutively preceding the readjustment. So

that, taking the use of the plural, " quarterly returns," instead of the singular, any quarterly return ; taking the reference to the second section of the act of 1864, which is the basis of the whole system, as the provision under which the readjustment shall be made ; and the clear statement of that section that the review shall be made once in two years, and shall be based on the provisions of section one of the same statute, which requires returns of two consecutive years, we do not think that the proviso is fairly capable of the construction which counsel for plaintiff claim for it.

If that construction be a sound one, the salary for the first quarter under it might not be half as much as would be a proper compensation for the preceding quarter on the same basis, and the return of a postmaster for the quarter on which this basis may be made, while doing him no good, might produce a very exaggerated salary for the man who should succeed him at the end of the quarter. We see nothing in this construction which commends it to the wisdom of Congress, and we see nothing in the language used by Congress which requires it.   It is in conflict with the opinions of the two able Postmasters General who have had the question under consideration, as well as with those of the Attorney General and his assistants, and it is also opposed to our own judgment of its fair meaning, taken in connection with the whole legislation on the subject.

As the record shows that there were not returns from the post office of the plaintiff for two years preceding the time when he demanded that a readjustment should take place, and also that a readjustment was made for the period from July 1, 1872, to July 1, 1874, it is obvious, according to this construction of the statutes, that there is no duty on the Postmaster General to make the readjustment asked for.

The judgment of the Supreme Court of the District of Columbia is, therefore,

*Affirmed.*