## UNITED STATES *v.* VERDIER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 49. Argued October 20, 1896. — Decided November 16, 1896.

In actions in the Court of Claims interest prior to the judgment cannot be allowed to claimants, against the United States; but the provisions of Rev. Stat. § 966 peremptorily require it to be allowed to the United States, against claimants, under all circumstances to which the statute applies, and without regard to equities which might be considered between private parties.

THIS was a petition by the administrator of James R. Verdier, deceased, for the payment of a balance of $1300.41 claimed to be due him upon a readjustment of his accounts as postmaster at Beaufort, South Carolina, from July 1, 1866, to April 30, 1869.

Upon a hearing in the Court of Claims that court made the following findings of fact:

"1. James R. Verdier was a duly qualified postmaster at Beaufort, S. C., from July 1, 1866, to the 30th day of April, 1869.

"2. Upon his retirement from office he appeared as indebted to the United States, on the face of his postal accounts, in the sum of $929.20. June 28, 1870, an action was brought by the United States against him on his official bond, in the United States District Court of South Carolina, to recover said sum, and July 5, 1870, the jury returned a verdict in favor of the United States for the sum of $1063.20, which verdict was, upon motion of Verdier's attorney, set aside.

"October 31, following, the attorney for said Verdier consented that the case be submitted to the court, and upon said date the jury returned a verdict in favor of the United States against Verdier for the sum of $1059.03; the costs were $36.80; total, $1095.83. Judgment thereon was duly signed January 25, 1871.

"3. November 3, 1885, application was made to the Postmaster General by the administrator for a review and read-

justment of decedent's salary as postmaster aforesaid, under the provisions of the act of March 3, 1883, c. 119, 22 Stat. 487. December 23, 1885, said salary was readjusted and the sum of $2892.84 found due said decedent's estate. August 4, 1886, c. 903, a sum of money was appropriated by Congress to pay this and similar allowances. 24 Stat. 256, 307, 308.

"4. March 4, 1887, decedent's postal account was audited by the Auditor for the Post Office Department, who charged his account with the aforesaid judgment and interest thereon from July 5, 1870, to August 4, 1886 (the date of appropriation), and costs of suit, the total thereof being the sum of $2296.77, and deducted this sum from the amount of salary credited to said account, showing a balance of $596.07.

"June 20, 1887, the United States attorney for the aforesaid district was instructed to satisfy said judgment, which was accordingly done July 25, 1887.

"5. The sum of $596.07 was paid plaintiff, who gave the following receipt:

Transfer draft.
"'Mailed Sept. 14, 1887. Received Sept. 26, 1887, the transfer draft of the Third Assistant Postmaster General, No. 4655, for 596 dollars .07 cents in my favor on the postmaster at New York, State of N. Y., to the
"'W. J. VERDIER, *Administrator.*'"

Upon these facts the court found as a conclusion of law that the petitioner was entitled to recover in the sum of $1233.57, 28 C. Cl. 268, for which amount judgment was entered and the United States appealed.

*Mr. Assistant Attorney General Dodge* for appellants. *Mr. Assistant Attorney Capers* was on his brief.

*Mr. Harvey Spalding* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The contest in this case is really over a question of interest. Upon the termination of his services as postmaster, Verdier was found, upon the face of his accounts, to be indebted to the government. Suit was brought against him upon his bond, and a verdict obtained July 5, 1870, for $1063.20, which was subsequently set aside; but the action ultimately resulted in a judgment against him, rendered January 25, 1871, in the sum of $1095.83.

By Rev. Stat. § 966, "interest shall be allowed on all judgments in civil causes recovered in a circuit or district court . . . in all cases where, by the law of the State in which such court is held, interest may be levied under process of execution on judgments recovered in the courts of such State; and it shall be calculated from the date of the judgment, at such rate as allowed by law on judgments recovered in the courts of such State." We see no reason why this section, or § 3624, fixing the rate of interest upon delinquent accounts of public officers at six per cent, does not apply to this case. Verdier was, therefore, properly charged with interest upon the judgment. *Amis* v. *Smith*, 16 Pet. 303.

By the act of July 1, 1864, c. 197, 13 Stat. 335, the system which had theretofore prevailed of paying postmasters by a commission upon the receipts of their offices was changed; and postmasters were divided into five classes, and paid by a salary gauged by their compensation for the two consecutive years preceding the act. The classification of postmasters was determined by the Postmaster General upon the basis of the commissions previously paid to them, and the exact amount of their salaries fixed within certain limitations provided by the act for each class. There was a further provision in the second section that the salary should be reviewed and readjusted by the Postmaster General once in two years, upon the basis upon which the salary was originally fixed; but that such change should not take effect until the first day of the quarter next following the order for the same. This section was amended by the act of June 12, 1866, c. 114, 14 Stat. 59, 60, by adding a proviso that when the quarterly returns of any postmaster showed that the salary allowed was

ten per cent less than it would have been on a basis of commissions, the Postmaster General should review and readjust under the provisions of the prior act.

It will be observed that these acts of 1864 and 1866· were both prospective in their operation. *United States* v. *McLean*, 95 U. S. 750. We must assume that when Verdier took office July 1, 1866, his salary was fixed by the Postmaster General under the act of 1864, this being the date. at which the first biennial term fixed by the act of 1864 expired. It would seem that no readjustment could then be made until the lapse of two years, or until July, 1868, unless, upon satisfactory representation, it .was deemed expedient by the Postmaster General. If a readjustment had been made under these acts, it would have operated prospectively only, and until April 30, 1869, when he ceased to serve as postmaster. Why a readjustment was not made does not appear. It may have been for the absence of quarterly returns, as there is no finding that such returns were made. It may have been by simple neglect of the Postmaster General to comply with the law; but there is no evidence of his refusal to do so, and in any event the government would not·be liable for his neglect in that particular. *United States* v. *Kirkpatrick*, 9 Wheat. 720; *United States* v. *Sherman*, 98 U. S. 565. It was not until 1883 that the Postmaster General was authorized to readjust the compensation of postmasters and to make such readjustments retrospective.

By the act of March 3, 1883, c. 119, 22 Stat. 487, the Postmaster General was authorized and directed to readjust the salaries of postmasters, whose salaries had not theretofore been readjusted under the act of 1866, " who had made sworn returns of their receipts and business for readjustment of salary " to the department, or who had "made quarterly returns in conformity to the then existing laws and regulations, showing that the salary allowed was ten per centum less than it .would have been upon the basis of commissions," such readjustment to be made in accordance with the act of 1866, and " to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business

or quarterly returns were made; provided, that every readjustment of salary under this act shall be upon a written application signed by the postmaster or late postmaster or legal representative entitled to such readjustment."

Pursuant to this statute application was made by the administrator of Verdier for a review and readjustment of his salary as postmaster, and on December 23, 1885, his salary was readjusted, and the sum of $2092.84 found to be due his estate.

On August 4, 1886, an act was passed by Congress, c. 903, 24 Stat. 256, 307, appropriating a sum of money to pay this and similar allowances. Verdier's account was finally audited March 4, 1887. In this statement he was charged with the judgment and interest thereon from July 5, 1870, to August 4, 1886 (the date of the appropriation), the total being the sum of $2296.77, and was credited with the amount of his readjusted salary and a balance of $596.07 found to be due him. This sum was subsequently paid, the receipt of petitioner's administrator taken for the amount, and the judgment against Verdier satisfied of record July 25, 1887. On September 28, 1888, this petition was filed to recover the difference between the original verdict and the amount which was deducted from his readjusted salary upon final settlement.

By the act of 1883 no readjustment could be made, except upon the application of the postmaster, and when that application was made in this case, the salary was for the first time readjusted. Until this time the debt was not liquidated — in fact it would be more accurate to say that it did not exist. The argument is made that, as the readjusted salary was earned prior to the verdict against Verdier of July 5, 1870, he ought not to be charged with interest upon the judgment against him for the sixteen years which elapsed from that time until August, 1886, when the act of Congress appropriating money for the payment of readjusted salaries was passed; or, which is nearly the same thing, that the government should be charged with interest upon his readjusted compensation from the time he left the office. It would certainly seem to be equitable that, if the government were indebted to Verdier at the time it obtained judgment against him, it should not charge

him with interest upon its judgment. But interest being a matter of purely statutory regulation, we are bound to give or withhold it as the statute directs. By the judgment of the District Court of South Carolina, Verdier became indebted to the government on January 25, 1871, in the sum of $1095.83, and as he did not pay the debt at the time, he was properly chargeable with interest. Rev. Stat. § 966.

Upon the other hand, the government did not become a debtor to Verdier until his claim was liquidated, and by Rev. Stat. § 1091, no interest can be allowed upon any claim against the government up to the time of the rendition of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest. The theory upon which interest is claimed seems to be that the Postmaster General was in fault for not having readjusted Verdier's salary under the act of 1866, and that Verdier ought not to be prejudiced by such default. The whole difficulty in the case, however, arises from the fact that there were claims upon both sides. Did the case of the government stand alone, there could be no doubt whatever that Verdier's estate would be properly chargeable with interest. Upon the other hand, if his accounts had been settled and paid at the expiration of his term, and a claim were now made under the act of 1883, it would not be claimed that the government would be chargeable with interest. The equity of petitioner's claim, if there be any, arises from the fact that while interest was running against him on his judgment, the government was equitably his debtor. Were the case between private individuals perhaps interest would be chargeable to both parties; but we are unable to see how the fact that there were mutual claims can authorize us to disregard the plain letter of the statutes. There is really no greater hardship in denying the petitioner interest than there would have been if he had not been a judgment debtor of the government.

An inherent vice of petitioner's argument is in the assumption that he and the government stand upon an equality with respect to interest. The truth is that in its dealings with individuals public policy demands that the government

should occupy an apparently favored position. It may sue, but, except by its own consent, cannot be sued. In the matter of costs it recovers but does not pay, and the liability of the individual would not be affected by the fact he had a judgment against the government which did not carry costs. So the statute of limitations may be pleaded by the government, but not against it ; nor is it affected by the laches of its officers. *United States* v. *Barker*, 2 Wheat. 395; *The Antelope*, 12 Wheat. 546; *United States* v. *McLemore*, 4 How. 286; *United States* v. *Boyd*, 5 How. 29; *United States* v. *Thompson*, 98 U. S. 486; *Simmons* v. *Ogle*, 105 U. S. 271; *United States* v. *Kirkpatrick*, 9 Wheat. 720; *United States* v. *Nicholl*, 12 Wheat. 505; *Gaussen* v. *United States*, 97 U. S. 584. Under the bankruptcy law, it was a preferred creditor, and its claims were paid even before the wages of operatives, clerks or house servants. Rev. Stat. § 5101. In short, the equities which arise as between individuals have but a limited application as between the government and a citizen.

Nor is it strictly true to say that the government was indebted to Verdier at the date of its judgment against him. He had performed services for which an indebtedness was subsequently voluntarily created by the government; but until the readjustment was made the law imposed no obligation upon the government to pay him an increased salary. Verdier could not have availed himself of it as a set off or counter claim to his own debt to the government, and in fact it never became a debt until the claim was liquidated under the act of 1883. As was said by this court in *United States* v. *McLean*, 95 U. S. 750, 753 : "The law imposes no obligation upon the government to pay an increased salary unless a readjustment has preceded it. And by the act of 1866 the Postmaster General is not to readjust an existing salary unless the quarterly returns made show cause for it. Now, if it be conceded that the quarterly returns made on the last day of each quarter, beginning with June 30, 1871, made it the duty of the Postmaster General to make a readjustment immediately on the receipt of the returns, still his readjust-

ment was an executive act made necessary by the law in order to perfect any liability of the government. If the executive officer failed to do his duty, he might have been constrained by a mandamus. But the courts cannot perform executive duties or treat them as performed when they have been neglected. They cannot enforce rights which are dependent for their existence upon a prior performance by an executive officer of certain duties he has failed to perform. The right asserted by the claimant rests upon a condition unfulfilled." In that case, as stated by Mr. Justice Miller in *McLean* v. *Vilas*, 124 U. S. 86, 87, this court held that the Court of Claims could not "perform the duty of readjusting the salary under the acts which conferred that power on the Postmaster General, and that there was no legal liability against the United States for the amount claimed by him until that officer had readjusted the salary in accordance with those acts of Congress"; and in *McLean* v. *Vilas* it was held that the statute did not contemplate a readjustment oftener than once in two years as a legal duty or obligation on the part of the Postmaster General.

Verdier's claim for interest in this case is based upon the assumption that the Postmaster General neglected his duty in failing to readjust his salary. We have shown that if he had performed his statutory duty his action would have been prospective only, and would have covered but comparatively a short period of Verdier's services; but however this may be, the government is not chargeable for his neglect in that particular.

It results that the judgment of the court below must be reversed, and the case remanded with direction to dismiss the petition.

Mr. Justice Gray did not hear the argument and took no part in the decision of this case.