**ASSINIBOINE INDIAN TRIBE**
v.
**UNITED STATES.**
No. 1–53.

United States Court of Claims.
June 8, 1954.

Adrien F. Busick and Louis A. Gravelle, Washington, D. C., for appellant. Douglas Whitlock, Delmar W. Holloman, and Davies, Richberg, Beebe, Busick & Richardson, Washington, D. C., were on the briefs.

Ralph A. Barney, Washington, D. C., with whom was J. Edward Williams, Acting Asst. Atty. Gen., for appellee.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

This is an appeal from a final determination of the Indian Claims Commission. Assiniboine Indian Tribe v. United States, 2 Ind.Cl.Com. 272. The appellant filed an amended petition with the Commission alleging a claim under clause (1) of Section 2[1] of the Indian Claims Commission Act, Aug. 13, 1946, 60 Stat. 1049, 25 U.S.C.A. 70a, for approximately $23,000,000, as just com-

---

1. The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska: (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and Executive orders of the President; * * *."

pensation. The appellant alleged that the land given to it by the Fort Laramie Treaty of 1851, 11 Stat. 749, was taken by the United States for public use under the power of eminent domain without rendering just compensation as required by the Fifth Amendment to the Constitution. The appellee filed a motion for summary judgment on the ground that the issues involved therein were *res adjudicata* under the decision of this court involving a claim for the same land in Assiniboine Indian Tribe v. United States, 77 Ct.Cl. 347. The motion was granted and appellant's amended petition was dismissed.

The appellant entered into the Fort Laramie Treaty of 1851 with the United States, wherein it was agreed that appellant would have the right to the use and occupancy of approximately 6,477,-940 acres of territory which was described in that treaty. By various Executive orders and Acts of Congress, which are set forth in the former opinion of this court and in the opinion of the Commission, this entire territory was taken by the United States and later disposed of as public land without rendering any compensation to the Assiniboine Tribe therefor.

A special jurisdictional act, Act of March 2, 1927, 44 Stat. 1263, was passed by Congress pursuant to which appellant presented to this court for adjudication a claim, *inter alia,* with regard to the identical land for which just compensation is now being sought. This court in adjudicating the case on its merits held that appellant had the right to the use and occupancy of this territory; that the United States had appropriated the entire territory without rendering any compensation to the tribe therefor; that the value of the territory at the time of such appropriation did not exceed 50 cents an acre or $3,238,970; that the amount which the United States was entitled to offset against this allowance, 77 Ct.Cl. 361–362, was a greater sum and therefore this judgment in favor of the tribe was satisfied by the judgment against the tribe for

the offsets and final judgment was entered dismissing the petition. A motion for a new trial on grounds not here pertinent was overruled. A petition to the Supreme Court for writ of certiorari on the grounds on which this court had adjudicated the case was denied. Assiniboine Indian Tribe v. United States, 292 U.S. 606, 54 S.Ct. 772, 78 L.Ed. 1467.

■ In its appeal to this court from the determination of the Commission dismissing its amended petition, appellant contends that the Commission erred in holding that the issues involved were *res adjudicata* because (1) the jurisdiction of this court in the former case was limited to allowing recovery based on an unlawful taking; (2) the cause of action involved in the former case was for damages for an unlawful taking whereas a separate and distinct cause of action is now being presented for just compensation for a lawful taking under the power of eminent domain; (3) appellant is not splitting its cause of action; (4) the taking was under the power of eminent domain because Congress either authorized or ratified it; (5) the legislative history of the Indian Claims Commission Act, 25 U.S.C.A. § 70 et seq., establishes appellant's right to have the present claim adjudicated on its merits; (6) *res adjudicata* is no defense where intervening decisions have created an altered situation; and because (7) *res adjudicata* is no defense where there has been a change in the law.

The appellee contends that the dismissal of appellant's amended petition by the Commission on the ground that the issues involved were *res adjudicata* was correct because (1) there has been no change in the law so far as this case is concerned; that this court in the former case had jurisdiction under the special act to award just compensation for the taking of appellant's Fort Laramie treaty land; (2) appellant's cause of action for the taking of this land was adjudicated on its merits by this court after a full hearing and judgment was rendered thereon; (3) the failure to

demand interest or its equivalent as a part of just compensation does not prevent the application of the rule of *res adjudicata;* (4) the claim now being presented does not represent a different or separate cause of action, but rather is the same cause of action with respect to the same lands based on a different legal theory; (5) just compensation is only recoverable when the United States takes private property for public use under the power of eminent domain, which is a lawful taking, therefore, if this court found in the former case that the taking was unlawful, the judgment being unmodified and not reversed is conclusive on the manner of acquisition and consequently bars appellant's present claim; (6) and because at the very minimum, the value of the land at the time of the taking was conclusively established by the former decision and collateral estoppel bars appellant from relitigating that question.

We consider first appellant's contention that it had two separate and distinct causes of action for the taking of the same land. There is no doubt that the use and occupancy title given appellant by the Fort Laramie treaty of 1851 was a property right; that this property right was invaded when the United States took the land; and that this violation gave rise to at least one cause of action. We hold that the appropriation of appellant's land by the United States gave rise to but one cause of action in appellant for the deprivation or taking of the same land. Whether appellant had a cause of action for just compensation or for breach of treaty was dependent upon the nature of the taking.

Of course, if the taking of the land by the United States for public use in violation of the treaty had been pursuant to authority granted by Congress, appellant would have had a cause of action for just compensation. On the other hand, if the taking of the land by the United States for public use in violation of the treaty had been without the authority of Congress, the taking would have been unlawful and appellant would have had a cause of action for breach of treaty. If, however, Congress subsequently ratified the unlawful taking, that ratification would have related back to the original unlawful taking and made it a lawful and rightful taking *ab initio* under the power of eminent domain and would have thereby eliminated appellant's cause of action for breach of treaty and substituted therefor a cause of action for just compensation. Crozier v. Fried Krupp, 224 U.S. 290, 305, 32 S.Ct. 488, 56 L.Ed. 771; Shoshone Tribe of Indians v. United States, 299 U.S. 476, 496, 57 S.Ct. 244, 81 L.Ed. 360. It is therefore clear that when appellant prosecuted the former suit for the appropriation of its land, it either had a cause of action for an unlawful taking or a cause of action for a lawful taking, but not both.

This brings us to the next major and, we believe, the crucial issue in this case of whether this court in the former case had jurisdiction under the special act to award just compensation for the taking of appellant's Fort Laramie treaty land.

In the former case appellant contended the land had been wrongfully taken and this court stated that it had jurisdiction to award damages for a wrongful taking. The appellant contends that this statement meant the court's jurisdiction was limited to awarding such damages. That is not correct. Since it was not requested it was unnecessary for this court to determine whether it also had jurisdiction to award just compensation.

The pertinent portion of the special jurisdictional act under which the prior case was adjudicated provided:

"*Be it enacted* * * * That jurisdiction be, and is hereby, conferred upon the Court of Claims, with right of appeal to the Supreme Court of the United States by either party, notwithstanding the lapse of time or statutes of limitation, to hear, examine, and adjudicate, and render judgment in any and all claims arising under or growing out of the Treaty of Fort Laramie of September 17, 1851 (Eleventh Stat-

utes, page 749), between the Government of the United States and the Assiniboine Indian Nation, and other Indian nations therein specified; and the treaty of October 17, 1855 (Eleventh Statutes, page 657), between the Government of the United States and the Blackfeet Indian Nation and other Indian nations therein specified; or any subsequent Act of Congress, treaty, agreement or Executive order, or treaty with any other Indian tribe or any nation that violates any of the treaty rights of the Assiniboine Indian Nation which the said Assiniboine Nation or Tribe may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States; and jurisdiction is hereby conferred upon the said courts to determine whether or not any provision in any such treaty has been violated or breached by the Government of the United States by Acts of Congress or otherwise, and, if so, to render judgment for the damages resulting therefrom. * * *

"Sec. 4. *That if it be determined by the court that the United States, in violation of the terms and provisions of any Executive order, law, treaty, or agreement, set forth and referred to in section 1, has unlawfully appropriated or disposed of any money or other property belonging to the Indians, damages therefor shall be confined to the value of the money or other property at the time of such appropriation* or disposal, together with any interest thereon which may have accrued by virtue of the failure or delay of the United States to pay over to or employ for the benefit of the Assiniboine Indian Nation or Tribe, moneys so required to be paid or employed by any Act of Congress, at the rate of interest provided by such Act or Acts of Congress; and with reference to all claims which may be the subject matter of the suits herein authorized, the decree of the court shall be in full settlement of all damages, if any, committed by the Government of the United States and shall annul and cancel all claim, right, and title of the said Assiniboine Indians in and to such money or other property. * * *" [Emphasis supplied.]

Senate Report No. 351, 69th Cong., 1st Sess., p. 1, and House Report No. 952, 69th Cong., 1st Sess., p. 2, accompanying this bill are enlightening. They state in part:

"* * * This bill is drafted in broad language to permit of a final adjudication of all the claims of the Assiniboine Indians. The committee is convinced that it is advisable from the standpoint of promoting good feeling among the Indians, to provide for a final adjudication of all their claims. * * * This bill is designed to clearly give to the Court of Claims authority to adjudicate any claims for violation of treaties made with the Assiniboine Indians and to render judgment for damages resulting therefrom. * * *"

When construed in light of the legislative history there is no doubt that the Act conferred jurisdiction on this court to adjudicate all claims arising from the violation by the United States of any of appellant's property rights which had been given to it by any treaty, Act of Congress, or executive order regardless of whether the right was rightfully or wrongfully violated.

The prior case of this plaintiff in this court was decided early in 1933. It was at that time and is now a well-settled principle of constitutional law that when the United States, in exercising the power of eminent domain, takes private property for public use, the owner is not only entitled to the value of the property at the time of the taking, but also, if the taking precedes the payment of compensation, to such additional amount as will produce the full equivalent of that value

paid contemporaneously with the taking, and a reasonable rate of interest is usually the method employed to ascertain this additional amount. Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123, 44 S.Ct. 471, 68 L.Ed. 934; Phelps v. United States, 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083; Jacobs v. United States, 290 U.S. 13, 16–17, 54 S.Ct. 26, 78 L.Ed. 142; United States v. Creek Nation, 295 U.S. 103, 111, 55 S.Ct. 681, 79 L.Ed. 1331; Shoshone Tribe of Indians v. United States, supra; United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 82 L.Ed. 1219; Blackfeet and Gros Ventre Tribes of Indians v. United States, Ct.Cl., 119 F.Supp. 161, and the cases cited therein.

The appellant's argument that this court's jurisdiction was limited to adjudicating only those claims that arose from an unlawful taking of its land is predicated on Section 4 of the special jurisdictional act. It argues that this court could not have awarded just compensation because Section 4 specifically confined the amount of damages to be recovered for any property unlawfully appropriated to the value of the property at the time it was taken. It also points out that the bill as it originally passed the House and Senate contained a provision allowing interest on the value of the property unlawfully appropriated and that this provision was eliminated. It also relies on the Statement of the House managers attached to the Conference Report which stated:

" * * * The House and Senate conferees have agreed upon language which will be a saving to the Government over the provision heretofore adopted by both Houses. It eliminates the payment of interest on all funds that may be recovered by the Indians but provides for the payment of interest on those items which carried interest when authorized by Congress and which have been withheld from the tribe. In-

terest would have been recovered on these funds had they been kept intact for the tribe. [68 Cong.Rec. 4252 (1927)]."

Section 4 had nothing to do with the type of claims that would have been presented but it is clear from Section 4 and this statement that Congress intended to confine damages for the land *unlawfully appropriated* by the United States to the value of the land at the time of the appropriation. There are two additional points that should be noted with respect to this limitation on the allowance of interest. First, it is a limitation on the allowance of interest as such and not a limitation on interest or its equivalent as a part of just compensation. Second, the last sentence that is quoted above in the Statement of the House managers epitomizes the purpose for giving interest or its equivalent as a part of just compensation.

The Supreme Court's interpretation in United States v. Klamath and Moadoc Tribes of Indians, supra, of almost identical language in a similar jurisdictional act, 41 Stat. 623, is persuasive in this case. In that case the jurisdictional act provided:

"Sec. 3. *That if it be determined by the Court of Claims in the said suit herein authorized that the United States Government has wrongfully appropriated any lands belonging to the said Indians, damages therefor shall be confined to the value of the said land at the time of said appropriation,* and the decree of the Court of Claims with reference thereto, when satisfied, shall annul and cancel all claim and title of the said Indians or any other tribe or band of Indians in and to said lands, as well as all damages for all wrongs and injuries, if any, committed by the Government of the United States with reference thereto." [Emphasis supplied.] 41 Stat. 623.

After holding the land had been taken under the power of eminent domain, the Supreme Court said that this limitation

pertained only to lands *wrongfully appropriated* and therefore did not bar the allowance of interest or its equivalent as a part of just compensation because the taking under the power of eminent domain was a *rightful appropriation.*

 The fact that the Act did not specifically provide for interest as a part of just compensation did not present an insuperable obstacle, because it is well established that where the jurisdictional act is silent as to interest or its equivalent as a part of just compensation, that interest or its equivalent should be allowed as a part of just compensation in Indian as well as ordinary cases. Seaboard Air Line Ry. Co. v. United States, supra; Brooks-Scanlon Corp. v. United States, supra; Phelps v. United States, supra; Jacobs v. United States, supra; United States v. Creek Nation, supra; Shoshone Tribe of Indians v. United States, supra; United States v. Klamath and Moadoc Tribe of Indians, supra; Blackfeet and Gros Ventre Tribes of Indians v. United States, supra.

We therefore conclude that if the land had been taken under the power of eminent domain this court had jurisdiction in the former case to award just compensation. Both parties agree that the special jurisdictional act gave this court jurisdiction to award damages if the land had been unlawfully taken.

It is unnecessary to decide whether appellant's land was taken under the power of eminent domain because in any event appellant had but one cause of action for the taking of the same land and that cause of action was prosecuted in the former case on the merits and judgment was rendered thereon.

 The value of the land at the time it was taken has been judicially determined and the award properly satisfied by allowable offsets, according to law. If the land had been *unlawfully* taken, interest could not have been allowed on that value under the law as it existed when the prior suit was brought, nor can it be allowed under the law in existence today. Rev.Stat.Sec. 1091, 36 Stat. 1141,

as amended, Judicial Code Sec. 177, 28 U.S.C. § 2516; United States v. Goltra, 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776, and the cases cited therein. If the Fort Laramie treaty land had been taken under the power of eminent domain appellant could have demanded and recovered interest or its equivalent as a part of just compensation but its failure to so demand and recover does not prevent the application of the rule of *res adjudicata.* As we read the statutes and their histories as to legal claims the application of that rule is required. Blackfeet and Gros Ventre Tribes of Indians v. United States, supra, and the cases cited therein. This case is not a separate and distinct claim, but is a part of a prior claim tried and adjudicated. Cf. Twin Cities Properties, Inc. v. United States, 90 Ct.Cl. 119, 125–128. Therefore, since this court had jurisdiction, the judgment, having been upon the merits, is an absolute bar to further litigation between the same parties, not only in respect to every matter which was actually advanced to support the prior claim, but also as to every matter which could have been advanced in connection with that claim. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Blackfeet and Gros Ventre Tribes of Indians v. United States, supra; Western (Old Settler) Cherokee Indians v. United States, 89 F.Supp. 1006, 116 Ct.Cl. 665, certiorari denied 340 U.S. 904, 71 S.Ct. 279, 95 L.Ed. 654; Choctaw Nation v. United States, 91 Ct. Cl. 320, 390, certiorari denied 312 U.S. 695, 61 S.Ct. 730, 85 L.Ed. 1130; Cook and Co. v. United States, 80 Ct.Cl. 708; International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 74 Ct.Cl. 132.

The appellant cannot point to any provision in the Act of August 13, 1946, which supports its claim, but relies solely upon the contention that the legislative history of the Indian Claims Commission Act, supra, establishes its right to have this court again adjudicate the present claim. In our opinion the appellee correctly points out that Section 2, 60 Stat.

1050 of the Act clearly bars the claim. That section provides:

> "Sec. 2. * * * All claims hereunder may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but *all other defenses shall be available to the United States.*" [Emphasis supplied.] 25 U.S.C.A. 70a.

The appellant has had its day in court and its claim for the taking of its land to which the treaty gave it a beneficial ownership has been adjudicated on the merits. The court found in the prior case that the land had been set apart for the Assiniboine Tribe by a treaty and had subsequently been appropriated by the United States. For that appropriation, we awarded compensation. For the reasons set forth in Blackfeet and Gros Ventre Tribes of Indians v. United States, supra, we reaffirm the holding that the Act of August 13, 1946, supra, and its legislative history permit the defense of *res adjudicata* and therefore appellant cannot revive or reopen the former case to request additional or different relief, if such relief could have been granted in the prior case.

The appellant further contends that the Indian Claims Commission Act, supra, changed the law thereby creating an altered situation and preventing the application of the doctrine of *res adjudicata*. The appellant argues that the Indian Claims Commission Act, supra, changed the law because it gives the Commission jurisdiction to hear and determine claims arising under the Constitution, whereas the special act under which the former Assiniboine case was tried did not expressly give this court jurisdiction to award just compensation. This contention is without merit because the Indian Claims Commission Act, supra, did not in any way change the law in this respect, inasmuch as this court had jurisdiction to and could have awarded just compensation in the former case, under the special jurisdictional act if the taking had been under the power of eminent domain. Just compensation was in other cases awarded where the statute did not expressly so provide.

The appellant also contends that *res adjudicata* is not a defense to its present claim because intervening decisions have created an altered situation. This contention is predicated on the erroneous assumption that appellant had two separate causes of action for the taking of the same land. All of the cases cited by appellant with respect to *res adjudicata* and intervening decisions deal with the effect of the collateral estoppel branch of the rule on a separate cause of action and therefore have no bearing on this case.

Moreover, we believe appellee correctly states that before and after appellant's former suit the Supreme Court had consistently held that land granted by the United States to Indian tribes by treaty represented a property right protected by the Constitution and that the taking of such property right under the power of eminent domain required the payment of just compensation. Lane v. Pueblo of Santa Rosa, 249 U.S. 110, 39 S.Ct. 185, 63 L.Ed. 504; Yankton Sioux Tribe v. United States, 272 U.S. 351, 47 S.Ct. 142, 71 L.Ed. 294; United States v. Creek Nation, supra; Shoshone Tribe of Indians v. United States, supra; United States v. Klamath and Moadoc Tribes of Indians, supra.

In addition to what has been said and the cases cited, there are other reasons which, in our opinion, support the claim that the prior decision of this court is a bar to the claim now presented and urged by plaintiff for further recovery, and we think the Indian Claims Commission was correct in so holding. It has been argued several times in cases involving the defense of *res adjudicata* that, in effect, the purpose of the Indian Claims Commission Act was to close out the claims of Indian Tribes, Bands, or Identifiable Groups of American Indians for ancient wrongs, real or supposed, so that the Indians would ultimately go out and become a part of the great body of citizens, instead of holding on to their tribal status under the impression that otherwise

they would lose their right to assert these tribal claims; and, that such act created a new or changed climate with respect to Indian Claims and litigation with respect thereto.

It may be admitted that this is true to some extent, and the statute makes that perfectly obvious, but the provisions of the act and its legislative history make it equally obvious, we think, where Congress intended that that changed condition should stop. When the Act and its history, including the hearings before the Committees on Indian Affairs of the House and Senate, are carefully studied it will be seen that the departure from the normal situation existing in litigation in general; the right to sue the United States, and the basis of such suits, is found only in clauses (2), (3), (4) and (5) of the act. Clause (1) of the Act is the *only* clause upon which this claim is based, and indeed, the only clause upon which it could be based, or predicated because it is a claim "in law or equity arising under the Constitution, laws, treaties of the United States, and Executive orders of the President". Thus it will be seen that the only thing the Indian Claims Commission Act did, or the only change it made with respect to jurisdictional acts which had been passed, insofar as the class or character of claims such as the one now before us is concerned, was to grant to Indian Tribes or "other identifiable group[s]" the right to sue on such legal or equitable claims, before the Indian Claims Commission until a certain time, with the right of appeal to this court and the Supreme Court, and thereafter to sue on such legal claims in this court without the necessity of special acts in each case. But we think it is clear that in doing this no change was made or intended in substantive law with reference to such claims and that Congress intended that there should be no such change. The statute does not so state and nothing was brought to the attention of the Congress before the act was enacted which would justify us in inferring that the Congress so intended when the statute was enacted.

If Indian Tribes should be permitted to open up and relitigate, in whole or in part, claims which have been heard, considered and determined on their merits by this court, then Congress should provide for this. It should not be done by judicial legislation.

The nature and character of Indian claims arising under clause (1) of the Indian Claims Commission Act should not be confused with the kinds of claims that may be presented for determination by the Commission or by this court under clauses (2), (3), (4), and (5). As to the latter class of claims, which marked the real departure by Congress from the normal situation previously existing in Indian litigation, there was clearly a real departure from prior practice and procedure, and it is perfectly clear from the provisions of the act and its history that this was intended for the purpose of closing out tribal claims for ancient wrongs, real or supposed. However, as to claims arising under the Constitution, acts of Congress, agreements or Executive orders of the President, we think it is equally clear that the Congress intended that there should be no radical change (and refusal to apply the defense of *res adjudicata* would be a radical change) in the ordinary rules of law or that there should be a change in the climate of Indian litigation.

A careful examination of the hearings before the Indian Claims Committees of the House of Representatives and the Senate will disclose that certain persons, who were interested in the matter of reopening and relitigating claims that had previously been before this court, sought to have a provision inserted in the act permitting this to be done, and the Committee refused to do this.

■ We must interpret and apply the act as it was finally written and voted upon by the members of the House and the Senate, and not according to a statement or report which may have been in-

serted in the Appendix of the Congressional Record by only a few members of the House after the bill had been voted upon and Congress had adjourned.

The rule of *res adjudicata* is clearly a defense available to the United States under Senate Amendment No. 5 to the House bill, and we think it is a defense that the Congress intended should be made in cases which had theretofore been litigated to final judgment on "legal or equitable claims"; otherwise, practically all of the decisions of this court in prior cases would have gone for naught. There was some doubt under the bill as it had passed the House, as to the defenses which the United States might interpose to claims by Indian Tribes, and the Senate wrote into the bill the provision as to defenses which the United States might make in such suits, with this explanation:

"It is understood that the bill as it passed the House was intended to permit all defenses to the Government except the plea of the statute of limitation or laches, and as amended this is made clear in the bill."

The statement of the House Managers on H.R. 4497 stated:

"Amendment No. 5: The House bill provided that no claim should be considered by the Commission where a final determination of such claim had already been made on the merits. The Senate Amendment, made upon recommendation of the Department of Justice provided that all defenses, except statutes of limitation and laches, should be available to the United States. This amendment was accepted by the conferees. It is implicit, however, from the purpose, history, and language of the entire bill, that this amendment does not permit the government to plead as a defense to any of the five enumerated classes of claims that such facts constitute only a political and not a justiciable wrong for the bill expressly makes such wrong justiciable by authorizing suit thereon. As stated in the Senate Report, this amendment does not permit the raising of legal defenses in cases based on standards of "fair and honorable dealings," for the bill expressly authorizes suit on such claims. Nor is this amendment intended to preclude the adjudication by the Commission of any claim authorized to be heard and determined under this section which has not been in fact previously adjudicated or settled on its merits, or as to which it has been previously held that the court had no judicial power to determine."

The Indian Claims Commission Act of August 13, 1946, is special legislation for the benefit of a particular class, just as jurisdictional acts waiving the statute of limitation, etc., and permitting suits had been in the past. In the case of Sioux Tribe v. United States, 97 Ct.Cl. 613, 665, this court said:

"The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown. The court may not enlarge its liability beyond what the language of the act requires. Eastern Transportation Co. v. United States, 272 U.S. 675, 686 [47 S.Ct. 289, 71 L.Ed. 472]; Blair v. City of Chicago, 201 U.S. [400], 401, 470–473 [26 S.Ct. 427, 50 L.Ed. 801]; Bridge Company v. United States, 105 U.S. 470, 480–484, [26 L.Ed. 1143]. When Congress has desired to open up claims, as a result of its action taken pursuant to a policy deemed to be for the welfare of the Indians, for consideration and adjudication *de novo* it has used language clearly indicating that purpose. Choctaw Nation v. United States, 119 U.S. 1, 2, 36–31, 35 [7 S.Ct. 75, 30 L.Ed. 306]; Assiniboine Indian Tribe v. United States, 77 Ct.Cl. 347, 348–350. While, in proper cases, the rules of law which apply to the Government are, with a few exceptions growing out of public policy, the same as those which apply to individuals, public policy demands that

the Government in its dealings with individuals should occupy an apparently favored position and consequently the equities which arise as between individuals have, in the absence of waiver by Congress, but a limited application as between the Government and a citizen. United States v. Verdier, 164 U.S. 213, 218, 219 [17 S.Ct. 42, 41 L.Ed. 407].

"The reason for the rule of strict construction as announced in the above-cited cases is that "it serves to defeat any purpose concealed by the skillful use of terms, to accomplish something not apparent on the face of the act, and thus sanctions only open dealing with legislative bodies." [See, also, Boston Sand and Gravel Company v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170.]

In interpreting and applying clause (1) of the Act and the provision with reference to the defenses available to the United States in cases arising under the statute, we should be governed by the language of the act, its purpose, and, so far as its history is concerned, by what the membership of the House and the Senate knew about such history through hearings, reports of Committees, etc., made and submitted before the bill was voted upon. Since the rule of *res adjudicata* is a well-recognized rule of law applicable in cases of this kind, we may not speculate as to what Congress might have done if a case such as this had been brought to the attention of Congress during the consideration of the bill, or if the statement of certain members of the Committee on Indian Affairs of the House, printed in the Appendix of the Congressional Record after the bill had been voted upon, had been expressly brought to the attention of that body during the debate upon and consideration of the bill. Sioux Tribe v. United States, supra.

Since this case presents an attempt on the part of appellant to relitigate a legal claim under clause (1) of the Indian Claims Commission Act previously before this court within its jurisdiction, and which was fully heard and determined on the questions and issues presented, we are of the opinion that there does not exist, merely because this is an Indian case, any more justification for relaxing or ignoring the principle of *res adjudicata* than there would be in other litigation generally. Electric Boat Company v. United States, 66 Ct.Cl. 333; Electric Boat Company v. United States, 81 Ct. Cl. 361, 367, 368; Pacific Railroad Company v. United States, 158 U.S. 118, 15 S.Ct. 766, 39 L.Ed. 918.

■ Judgments of this court not appealed and which stand unmodified are as final and conclusive as are the judgments of the Supreme Court, and may not be reopened for retrial or modification without clear and express authority of Congress. Pope v. United States, 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3. This is implicit in Sections 285 and 286, U.S. Code, Title 28,[2] Act of March 3, 1863, 12 Stat. 766, March 3, 1911, 36 Stat. 1141, which provide as follows:

"285. The payment of any amount due by any judgment of the Court of Claims, and of any interest thereon allowed by law, as provided by law, shall be a full discharge to the United States of all claim and demand touching any of the matters involved in the controversy."

"286. Any final judgment against the claimant on any claim prosecuted as provided in this chapter shall forever bar any further claim or demand against the United States arising out of the matters involved in the controversy."

In the prior case of the Assiniboine Indian Tribe v. United States, 77 Ct.Cl. 347, this court, as hereinbefore stated, found the 6,477,940 acres of treaty lands of the tribe had been appropriated by the United States, and we made and entered an award to the tribe of $3,238,970. As required by the statute we considered,

---

2. Now 28 U.S.C.A. §§ 2517, 2519.

determined and adjudicated, on the evidence submitted, defendant's statutory claim for payments made to the tribe by defendant on account of the tribe's claim, and for gratuitous expenditures made by the United States for the benefit of the tribe without treaty obligation, and found that such payments and gratuities made and expended by the United States amounted to $4,227,474.56, an amount which was in excess of the judgment for the tribe. As also required by the statute, 28 U.S.C. § 250,[3] we applied the payments and gratuities expended by the United States against the award or judgment in favor of the tribe, and after doing so, found that no net amount was due from the United States to the Assiniboine Tribe. This resulted in as an effective payment by the United States of the award and judgment of $3,238,970 in favor of the tribe within the meaning of the above-quoted sections, as if such award had been reported by the President to Congress and paid by that body through an appropriation in the usual course in such cases. This is so for the reason that Congress has expressly directed that judgments of the Court be satisfied by counterclaims in the following provision in 28 U.S.C. § 250, which first appeared in section 3 of the Act of March 3, 1863, 12 Stat. 765:

"All set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court: * * *."

If Congress intended that Indian cases which had been heard, determined and adjudicated fully on the merits of the questions and issues presented, should be reopened and relitigated, it should have so provided in language sufficiently clear not to be misunderstood. If cases such as this should be reopened and again heard and adjudicated, it is for Congress rather than the courts to so provide. Pacific Railroad Co. v. United States, supra; Pope v. United States, supra.

We therefore conclude that the rule of *res adjudicata* is a bar to appellant's claim in this appeal. The final determination of the Indian Claims Commission sustaining the motion of the United States for summary judgment and dismissing appellant's amended petition is affirmed.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

MADDEN, Judge (dissenting).

For the reasons which I gave in dissenting from the opinion of the court in Blackfeet and Gros Ventre Tribes of Indians v. U. S., I respectfully dissent.

LARAMORE, Judge, took no part in the consideration or decision of this case.