Williams, Judge,
delivered the opinion, of the court.
The plaintiffs herein are the Western or Old Settler Cherokees referred to in section 1 of the Jurisdictional Act, and are those Cherokees or their successors who were parties to the treaty between the United States and the Cherokee Nation of Indians of the date of August 6, 1846 (9 Stat. 871), and as identified in Article IY thereof.
Prior to 1817 the Cherokee Indians lived east of the Mississippi River where they had occupied and had possession of a large domain for a period long antedating the coming of the White Man to America. By the Treaty of 1817 (7 Stat. 156), and by the Treaty of 1819 (7 Stat. 195) they made a cession of certain of their lands in Georgia, Tennessee, and Alabama, to the United States in consideration for certain lands in the then territory of Arkansas on the Arkansas and White Rivers. A portion of the Cherokees thereafter emigrated to this territory in Arkansas and were thereafter designated as the Western Cherokees.
By the Treaty of 1828 (7 Stat. 311) amended by the supplementary treaty of 1833 (7 Stat. 414), the Western Cherokees exchanged the lands ceded to them by the treaties of 1817 and 1819 for lands in what is now the State of Oklahoma and removed thereto. The Cherokee Indians remaining in the East, and then known as the Eastern Cherokees, were not parties to these treaties and had no interest and claimed no interest in the land ceded therein.
By the Treaty of 1835 (7 Stat. 478), the Eastern Cherokees in the name of the Cherokee Nation ceded to the United States all their lands and possessions east of the Mississippi River for the sum of $5,000,000, after making certain stipulated deductions therefrom. An additional sum of $600,000 to be expended for certain specific purposes, and any balance thereof, not so expended, to be added to the Cherokee school fund, was provided by the supplementary treaty of 1836 (7 Stat. 488) between the same parties. One of the provisions of the Treaty of 1835 was that the Cherokees would remove to the lands in Oklahoma granted to the Western Cherokees in the treaties of 1828 and 1833, which lands the United States agreed, together with other lands ceded in this treaty “shall be included in one patent executed to the Cherokee *581 Nation of Indians by the President of the United States according to the provisions of the act of May 28, 1830.” At the time these treaties were executed the Western Cherokees had no interest in the Cherokee lands east of the Mississippi River and claimed none.
The major portion of the Cherokees living east of the Mississippi River were removed to the Cherokee lands in Indian Territory by the United States in about 1838 and they were subsequently known or designated as the Eastern or Emigrant Cherokees, while the Western Cherokees were thereafter designated as the Western or Old Settler Cherokees. Both groups repudiated the Treaty of 1835, contending that it was falsely executed by unauthorized persons and that the rights of both groups were utterly disregarded by its terms. Also bitter controversies arose between the Cherokees themselves after their reunion on the Indian Territory lands. These controversies led to the execution of the Treaty of August 6, 1846, to which both the Eastern or Emigrant Cherokees and the Western or Old Settler Cherokees were parties. By the terms of this treaty the provisions of the Treaty of 1835 and the supplementary treaty of 1836 were, in effect, ratified and confirmed. By Article IX the United States agreed to make a fair and just settlement of all monies due to the Cherokees, subject to the per capita division under the Treaty of 1835, and to pay whatever balance was found to be due after proper deductions therefrom, in equal amounts, per capita, to all those individuals, heads of families, or their legal representatives, entitled to receive the same under the Treaty of 1835 and the supplement thereto of 1836, being those Cherokees residing East at the date of the treaty and the supplement. By Article IY of the Treaty the United States agreed to pay a sum equal to one-third part of the residuum found to be due the Cherokee Nation, to the Old Settlers or Western Cherokees, to be distributed per capita to each individual of the said group (Finding 4). In speaking of this treaty, the court in Western Cherokee Indians v. United States, 21 C. Cls. 1, 36, said:
That treaty was a compact between three parties, the United States, the Eastern, and the Western Cherokees. Its *582 purpose was to make the Eastern and Western Cherokees parties to the treaty of New Echota [1835], which they had never conceded themselves to be, and to secure peace in the Cherokee country. The principle upon which it sought to accomplish this purpose was, that on the one hand the Western Cherokees should participate in the purchase money which had been paid for the lands east of the Mississippi; and on the other, that they should abandon their autonomy and become subject to the government which had been established by the Eastern Cherokees.
The reason behind the principle was that in 1835 the Western Cherokees owned the Cherokee country west and had paid for it, and that the Eastern Cherokees acquired by the terms of the treaty of New Echota two-thirds of this without paying for it, and at the same time retained all of the purchase money which had been given for their possessions east of the Mississippi.
By the terms of this arrangement the Eastern Cherokees consented to their [Western Cherokees] sharing in the purchase money so far as it was still held by the United States in the form of trusts and annuities; and the United States agreed that so far as it had been paid away to individual Indians and could not be restored they should pay it over again, and thus make good to the Western Cherokees their rightful proportion of the fund; * * *.
By Article XI of the Treaty of 1846 it was agreed that the question as to whether the Cherokee Nation shall be allowed interest on whatever sum be found due the Nation, and from what date, and at what rate per annum, would be submitted to the Senate of the United States for decision.
The act of April 25, 1932, confers jurisdiction upon the Court of Claims, notwithstanding the lapse of time or statute of limitations, to' hear, examine, adjudicate, and render judgment in any and all legal and equitable claims arising or growing out of any treaty or agreement between the United States and the Cherokee Indians, or arising or growing out of any act of Congress in relation to Indian Affairs, which the said Eastern or Emigrant and Western or Old Settler Cherokees may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States and paid in full.
*583 It is alleged in tbe petition that the original amount due the Western Cherokees or Old Settlers under the provisions of Article IY of the Treaty of 1846 was the sum_of $746,-618.53; that'this said sum was an interest bearing fund at the rate of 5% per annum from June 12, 1838, until paid; that three several payments have heretofore been made to plaintiffs on account of this interest bearing fund on the respective dates of September 22, 1851, August 24, 1894, and March 3, 1899; that applying these partial payments at the dates respectively made, as directed in the proviso of section 3 of the jurisdictional act, there is now due the plaintiffs the sum of $320,134.70, together with interest thereon from March 4, 1899, the date of the last payment, until paid; and, that there is also due the plaintiffs the further sum of $42,552.31 interest which had accrued on the principal sum prior to March 4, 1809. The plaintiffs ask a judgment for these several amounts and assert in the petition that the claim now presented has not heretofore been determined on the merits by the Court of Claims or the Supreme Court of the United States and paid in full.
The defendant contends that the claim sued upon — the amount due plaintiffs under Article IY of the Treaty of 1846, principal and interest — has heretofore been determined and adjudicated on the merits by both the Court of Claims and the Supreme Court of the United States, and paid in full.
It was held in the case of the Eastern or Emigrant Cherokees v. United States, No. 42077, decided on December 2, 1935 (ante, p. 180) that the claim therein made, similar in every respect to the claim here made by plaintiffs, and based essentially on the identical facts disclosed in the instant case, was res judicata by reason of former decisions of this Court (Cherokee Nation v. United States, 40 C. Cls. 252), and the Supreme Court of the United States (United States v. Cherokee Nation, 202 U. S. 101). What was said in Eastern or Emigrant Cherokees case No. 42077 is applicable to the facts disclosed in this case and the contentions made by plaintiffs in respect to them, and is controlling.
The plaintiffs here are the same Western or Old Settler Cherokees who were parties plaintiff in Western Cherokee *584 Indians v. United States, in 27 C. Cls. 1, 61. The claim now sued upon is the precise claim adjudicated in that case— the balance, principal and interest, due the Western or Old Settler Cherokee Indians under Article IY of the Treaty of 1846, Article XI of the same treaty, and the Besolution of the United States Senate on September 5, 1850. The plaintiffs asserted that there was then due them under Article IY of the Treaty of 1846 a balance of $830,756.94 on the principal sum and interest thereon at <5% per annum from June 12, 1838, until paid. The court in deciding the issues raised in plaintiffs’ petition said in respect to the amount due plaintiffs from the residue of the Cherokee treaty fund:
The final account, therefore, between the parties of all subjects of difference “arising from or growing out of treaty stipulations and acts of Congress”, adjusted and determined by this suit, “so that”, in the words of the statute, “the rights, legal and equitable, both of the United States and of said Indians”, are now fully determined and forever at rest, will be stated as follows:
Balance remaining due to Western Cherokees of their just and proper proportion, 'being one-third of the true residuum of the treaty fund, $224,972.68; interest thereon from 12th June, 1838, to 30th November, 1891, $601,426.70.
The court entered a decree awarding the plaintiffs a judgment for the amount shown to be due on this statement of the' account. The Supreme Court upon appeal (United States v. Old Settlers, 148 U. S. 427) modified somewhat the account as stated by the Court of Claims and found and held that the balance due to the Cherokees on account of the Cherokee treaty fund was $212,376.94. Thereafter, upon receiving the mandate of the Supreme Court, the Court of Claims modified its former judgment in conformity with the decision of the Supreme Court and awarded judgment as follows:
Principal of the judgment_$212, 379. 94
Interest thereon at 5% per annum from June 12, 1838, to June 6, 1893_ 583,830.12
Total_ 796,207.09
The amount of this judgment, both principal and interest, was subsequently appropriated in full by Congress and *585 paid to the plaintiffs, the Western or Old Settler Cherokees, in accordance with the provisions of Article IY of the Treaty of 1846.
It is clear, too clear for argument, that the judgment of this court in Western Cherokee Indians v. United States, supra, in conformity with the mandate of the Supreme Court of the United States, was a final determination and adjudication on the merits of any and all claims of the plaintiffs against the United States arising under the provisions of Article IY of the Treaty of 1846, Article XI of the same treaty, and the Resolution of the Senate of the date of September 5, 1850. The claim sued upon having been heretofore determined and adjudicated, both by the Court of Claims and the Supreme Court of the United States, and paid in full, does not come within the terms of the jurisdictional act.
Section 3 of the Jurisdictional Act provides:
Sec. 3. In said suit or suits the court shall also hear, examine, consider, and adjudicate any claims which the United States may have against the said Indians or any of them, but any payment or payments which have been made by the United States upon any such claim or claims shall not operate as an estoppel but may be placed [sic] as an offset in such suit or suits, and the United States shall be allowed to plead and shall be given credit for all sums, including gratuities, paid to or expended for any of said classes of Indians: Provided, however, That in any claim sued on by said Cherokees for any part of an interest-bearing fund upon which account any payment or payments shall have been made, such payment or payments shall first be applied to reduction or payment of interest earned to the date of such respective payments, and the balance, if any, shall then be applied to reduce the interest-bearing principal, and not otherwise.
The plaintiffs construe the proviso of this section as conferring authority on the court, notwithstanding the former adjudication, to reopen the account in respect to the principal treaty fund and to adjudicate it in the manner directed in the proviso, applying the various partial payments first to the reduction of interest, and the balance, if any, to the principal sum due. This contention was made in *586 Eastern or Emigrant Cherokees v. United States, No. 42077, supra, and was rejected by the court. It was there said:
The proviso as we construe it is purely procedural. It lays down the manner in which partial payments are to be applied on claims sued upon which come within the jurisdiction of the court as defined in section 1 of the Act. The court’s jurisdiction as defined in section 1 is expressly limited to claims which have not “heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States and paid in full.” The proviso in no way changes or enlarges the jurisdiction thus conferred. It has application only to such claims as plaintiffs have a right to assert, and the court has the right to hear and determine under the provisions of section 1 of the jurisdictional act.
The claim asserted by plaintiffs in this action is not within the terms of the jurisdictional act and the court is without authority to hear and determine it. The petition is accordingly dismissed. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.