MaddeN, Judge,
delivered the opinion of the court:
By a treaty between the United States and the tribes, the Chickasaw and Choctaw tribes of Indians held lands in what is now Oklahoma “in common; so that each and every member of either tribe shall have an equal undivided interest in the whole.” The tribes took part in the Civil War on the side of the Confederacy. In 1865, by treaty, the tribes renewed their allegiance to the United States and acknowledged themselves to be under its protection.[1]
In 1866 in. a treaty between the United States and the tribes, the tribes agreed to abolish slavery. In Article III of the treaty, the tribes ceded to the United States a part of their territory, in consideration of the sum of $300,000 to be held in trust by the United States, until the legislatures of the tribes should within two years confer upon their former slaves, or freedmen the privileges of citizens, excepting rights in the “annuities, moneys, and public domain of the tribes,” and also should give each freedman forty acres of land. It provided that if these benefits were not conferred upon the freedmen, the United States would remove the freedmen from among the Indians, and hold the money in trust for the freedmen.
The tribes did not adopt the specified legislation within the two-year period and the United States did not thereafter remove the freedmen. Hence they remained with the Indians without defined political status or property rights. In 1882 Congress again offered a financial inducement to either tribe which would adopt its freedmen in accordance *202 with tbe terms of Article III of tbe treaty of 1866 (22 Stat. 68, 72). Tbe Choctaws adopted legislation to this end in 1888, but attached qualifications which may have prevented it from complying with the treaty of 1866. This legislation probably conferred political rights upon the Choctaw freedmen, but there is no showing that any land was permanently allotted to them. Between this time and 1897 the Choctaws desired to give their freedmen allotments, and the Chickasaws were unwilling to adopt theirs, or to permit the Choctaws to give lands to the Choctaw freedmen out of the common tribal lands. In 1897 the United States Commission to the Five Civilized Tribes (the Dawes Commission) negotiated at Atoka, in the Indian Territory, a proposed agreement with the Choctaws and Chickasaws which provided that all tribal lands should be allotted to the Choctaws and Chickasaws, except that the Choctaw freedmen should each receive forty acres, and that the amounts of land so allotted to the Choctaw freedmen should be subtracted from the amounts which would otherwise have been allotted to the Choctaw Indians. By this arrangement the Choctaws would have been giving lands to their freedmen out of their own share, and the Chickasaws would have been making no contribution from their share of the lands. The Chickasaw freedmen were not mentioned in the proposed agreement, it apparently being understood that they had not been adopted and had no rights.
Chairman Dawes was not present at Atoka, and when the proposed agreement was sent to Washington, it was modified before being enacted by Congress in 1898 as a part of the Curtis Act (30 Stat. 495, 505), to give the Chickasaw freedmen as well as the Choctaw freedmen forty-acre allot-' ments, the allotments to the freedmen of each tribe to be subtracted from the allotments to the Indians of that tribe. Each tribe was, therefore, to furnish the land for its own freedmen. As to the Chickasaw freedmen it provided that they should each be allotted forty acres “to be selected^ held, and used by them until their rights under said treaty [the treaty of 1866] shall be determined in such manner as shall be hereafter provided by act of Congress.” The Atoka *203 agreement as enacted by Congress was approved by a majority vote of the members of each of the tribes.
A “supplemental” agreement was made on March 21,1902, between the United States and the two tribes, which was embodied on July 1 of that year in an act of Congress (32 Stat. 641) and ratified by the citizens of the two tribes. This agreement contained detailed provisions for the enrollment of the members and freedmen of the tribes, the allotment to each member of 320 acres instead of the allotment of all the land as in the Atoka agreement, the allotment to each Chocta-w and Chickasaw freedman of 40 acres, the sale of the remaining unallotted land and the distribution of the proceeds.[2]
The supplemental agreement had no provision analagous to the provision of the Atoka agreement as negotiated at Atoka requiring the Choctaws to provide for their own freedmen by subtraction from their own allotment, nor to the provision of that agreement as enacted by Congress making the same requirement of both the Choctaws and Chickasaws. It did, however, in section 36 take notice of the Chickasaw claim that its freedmen had no rights, by conferring authority upon the Court of Claims to determine whether such freedmen had rights in the tribal lands under the treaty of 1866 and subsequent legislation. To that end it directed the Attorney General of the United States to file a bill of interpleader in the Court of Claims against the Choctaws and Chickasaws and the Chickasaw freedmen.
Sections 40 and 68 of the supplemental agreement, as enacted by Congress, were as follows:
40. In the meantime the Commission to the Five Civilized Tribes shall make a roll of the Chickasaw freedmen and their descendants, as provided in the Atoka agreement, and shall make allotments to them as provided in this agreement, which said allotments shall be held by the said Chickasaw freedmen, not as temporary allotments, but as final allotments, and in the event that it shall be finally determined in said suit that the Chickasaw freedmeii are not, independently of' this agreement, entitled to allotments in the Choctaw *204 and Chickasaw lands, the Court of Claims shall render a decree in favor of the Choctaw and Chickasaw nations according to their respective interests, and against the United States, for the value of the lands so allotted to the Chickasaw freedmen as ascertained by the appraisal thereof made by the Commission to the Five Civilized Tribes for the purpose of allotment, which decree shall take the place of the said lands and shall be in full satisfaction of all claims by the Choctaw and Chickasaw nations against the United States or the said freedmen on account of the taking of the said lands for allotment to said freedmen: Provided, That nothing contained in this paragraph shall be construed to affect or change the existing status or rights of the two tribes as between themselves respecting the lands taken for allotment to freedmen, or the money; if any, recovered as compensation therefor, as aforesaid,
* * * * *
68. No act of Congress or treaty provision, nor any provision of the Atoka agreement, inconsistent with this agreement, shall be in force in said Choctaw and Chickasaw nations.
The suit in the Court of Claims was filed, and the court held [3] that the Chickasaw freedmen had no rights prior to the enactment of the supplemental agreement. It therefore rendered judgment against the United States in favor of the two tribes in the proportion of one-fourth to the Chickasaws and three-fourths to the Choctaws [4] for the value •of the land allotted to the Chickasaw freedmen. The amount of the judgment was ultimately determined to be $606,936.08 which was paid to the tribes in the specified proportions. Prior to the entry of final judgment in that suit on January 24, 1910, the Choctaws filed an “Application for Additional Decree” stating that the Chickasaws were entitled to be paid for their proportionate one-fourth interest in the commonly •owned lands allotted to the Choctaw freedmen and requesting the court to enter a supplemental decree deducting the amount to which the Chickasaws would be thus entitled from *205 tbe Cboctaws’ share of the instant judgment. This court did not act upon that request, apparently because it was beyond the scope of the enabling act under which the suit was brought.
On March 11,1910, the Governor of the Chickasaw Nation wrote to the Commissioner of Indian Affairs requesting permission to employ counsel for the Chickasaw Nation and stating the Chickasaw claim which is the subject of this suit. This request was not acted upon, an interdepartmental recommendation saying that in view of the Choctaws’ admission of liability in their request for an additional decree, litigation would not seem necessary to settle the controversy.
The enabling act of Congress authorizing this suit was passed on June 7,1924 (43 Stat. 537). The Chickasaws claim compensation for their one-fourth interest in the common tribal lands allotted to the Choctaw freedmen under the supplemental agreement of 1902, with interest.
The foregoing recital shows that the Chickasaws never adopted their freedmen; that their freedmen did receive allotments under the agreement of 1902, but that these allotments were paid for by the United States, and hence cost neither the Chickasaws nor the Choctaws anything; that the allotments to the Choctaw freedmen were made from the commonly owned tribal lands, and hence the Chickasaws contributed one-fourth of those allotments; that the Chickasaws have consistently claimed that neither set of freedmen should be provided with land at the expense of the Chickasaws; that the Choctaws, in the agreement negotiated at Atoka in 1897 assented to this position by agreeing that the Choctaws should provide allotments for their freedmen by deductions from their own allotments and by omitting any provision at all for allotments to Chickasaw freedmen; that the Choctaws again, in their application to the Court of Claims in 1909 for a modification of the decree in the Chickasaw freedmen case, desired to compensate the Chickasaws for their contribution to the allotments of the Choctaw freedmen.
*206 The defendants, the United States and the Choctaw Nation, assert that the Chickasaws assented, in the treaty of 1866, in the Atoka agreement as enacted by Congress in 1898, and in the supplemental agreement of 1902, to the adoption by the Choctaws of their freedmen and the allotment of land to them. Whatever may have been the power of the Choctaws, under the treaty standing alone, to make such a wholesale adoption,[5] and give such adopted persons a share in the Chickasaws’ interest in the lands, the whole history of the controversy shows that none of the parties ever so interpreted the treaty. The subject of the rights of the freedmen in the lands was a constant subject of negotiation. It was not regarded as settled, and was not settled by the treaty of 1866.
As to the Chickasaws’ consenting in the Atoka agreement and the agreement of 1902 to the Choctaws’ adopting their freedmen and providing them with land, there was, of course, consent. But it was given on terms. In the Atoka agreement the terms were that the Choctaws were to provide the land for their own freedmen by subtraction from their own allotments. As that agreement was enacted by Congress, the same provision was made for the Chickasaws, but their freedmen’s allotments were made temporary and subject to further determination as to their rights. So the consent there given was no consent to a provision for the Choctaw freedmen at the expense of the Chickasaws.
The supplemental agreement of 1902 is, therefore, the determining factor. That agreement, as we have said above, provided for permanent and unqualified allotments to both Choctaw and Chickasaw freedmen. It omitted the provision of the Atoka agreement for deduction from allotments to members. As to the Chickasaw freedmen, it provided for determination in the Court of Claims as to whether they were entitled to allotments from tribal lands, or whether the United States should supply those allotments at its *207 expense. In section 68 it repealed inconsistent provisions of the Atoka agreement.
Plaintiff claims, and we have found, that in the negotiation for the supplemental agreement of 1902, plaintiff asserted' that it should not have to contribute to the allotments for Choctaw freedmen, and that the proviso inserted in section 40 was drawn, in part, for the purpose of protecting it from that burden. The language is as follows:
Provided, That nothing contained in this paragraph shall be construed to affect or change the existing status or rights of the two tribes as between themselves respecting the lands taken for allotment to freedmen, or the money, if any, recovered as compensation therefor, as aforesaid.
This language is not well chosen for the purpose for which plaintiff claims and we find it was inserted. It relates, on its face, only to the matters “contained in this paragraph,” and the paragraph relates to allotments to the Chickasaw freedmen and the suit in the Court of Claims to determine the rights of those freedmen, and of the rights of the two tribes to compensation for those allotments. Yet the determination of the matters to which the paragraph directly relates might well have had effects upon the question at issue in this litigation. If this court had held in that litigation that the Chickasaw freedmen were entitled to allotments from the tribal lands, there would have been the question as to whether those allotments should be taken from the Chickasaw interest in the lands or from the interests of both tribes, and that would have raised a similar question as to the Choctaw freedmen’s allotments.
If the proviso had related only to the allotments to Chickasaw freedmen, it would have been natural for the language not to speak generally of “allotments to freedmen” as it did, but to speak of “allotments to said (or such) freedmen” or “allotments to Chickasaw freedmen.” Three times earlier in the same paragraph “Chickasaw freedmen” are mentioned, and twice just before the proviso “said freedmen” are referred to. The mention in the proviso, in the alternative, *208 of “the money, if any, recovered as aforesaid,” does not, we think, make it certain that the proviso was speaking only of the Chickasaw freedmen’s allotments. It no doubt included them, but we think it also included the Choctaw allotments.
It would have been strange for plaintiff to have, for no reason which has been suggested, yielded its position on the point of the Choctaw freedmen’s allotments in 1902, after having maintained it consistently for so long. If it had so yielded in 1902, it is impossible that the Choctaws would have, in 1909, and before the litigation mentioned in the paragraph had been completed, sought to present to the Chickasaws a large sum of money in compensation for the claim, at a time when the Chickasaws were not even represented by an attorney. We have no doubt that the Choctaws understood the proviso as we have interpreted it.
We conclude, therefore, that the arrangement of the Atoka agreement whereby the Choctaw freedmen were to be furnished their allotments at the expense of the Choctaws and not of plaintiff was incorporated into the supplemental agreement of 1902, as an obligation of the Choctaw Nation. Since the Choctaw Nation is a party to this suit, having been made such pursuant to Section 6 of the Jurisdictional Act under which this suit is brought, we conclude that plaintiff is entitled to recover from the Choctaw Nation, but the determination of the amount of the recovery is reserved for further proceedings pursuant to Rule 39 (a).
The primary obligation being that of the defendant, the Choctaw Nation, and there being no claim that that defendant is unable to satisfy whatever judgment may be rendered, we do not consider nor decide what is the liability, if any, of the defendant, the United States.
It is so ordered.
JoNes, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Ohief Justice, concur.

 See The Chickasaw Freedmen, 193 U. S. 115, affirming 38 C. Cls. 558, for a fuller recital of pertinent early history. For other phases of the present controversy, see The Choctaw and Chickasaw Nations v. The United States, 81 C. Cls. 63.

 See The Choctaw Nation v. The United States and The Chickasaw Nation, 83 C. Cls. 140, 144.

 United States v. The Choctaw Nation, 38 C. Cls. 558, affirmed sub nom. The Chickasaw Freedmen, 193 U. S. 115.

 These are the proper proportions recognized by treaties, statutes, and practice of the shares of the two tribes dn such distributions. See The Choctaw Nation v. the United States and the Chickasaw Nation of Indians, 83 C. Cls. 140.

 The Superintendent for the Five Civilized Tribes reported on July 26, 1939, that allotments had been made to 5,973 Choctaw freedmen of 266,435.13 acres of land, the appraised value of which for allotment purposes was $763,739.12.