## WESTERN (OLD SETTLER) CHEROKEE INDIANS ex rel. OWEN et al. v. UNITED STATES.

### No. I.

United States Court of Claims.

Nov. 7, 1949.

MADDEN, Judge.

We have this case on an appeal from the Indian Claims Commission. The respective jurisdictions of the Commission, and of this Court on appeal, were created by the Act of Congress approved August 13, 1946, 60 Stat. 1049, 25 U.S.C.A. §§ 70a, 70s. We reprint the first two paragraphs of Section 70a in a footnote.[1] The appellants filed

---

1. 70a. "Jurisdiction; claims considered; offsets and counterclaims.

"The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or

their petition with the Commission, asking compensation for certain lands which we will refer to as the Outlet Lands west of the 100th meridian west. They asserted in their petition that they had a valid claim for such compensation, in lieu of the lands which they never received, because they would have received the lands or would have been paid for them if a mistake, mutual or unilateral, had not been made in the writing of a certain treaty, or if the United States had dealt fairly and honorably with them in regard to certain land transactions. They said that in conversations with President Jefferson in 1808 he promised them that, in addition to an exchange of their eastern lands for lands of the same acreage west of the Mississippi, they should have an outlet from the western boundary of their new lands to the game country, the outlet to extend as far west as the sovereignty of the United States and its right of soil extended; that provision for the outlet should have been made in the treaty written in 1817 and ratified in 1819, 7 Stat. 156, but was either intentionally or mistakenly omitted therefrom; that the Indians who agreed to the treaty could not read or write English, the language of the treaty, and signed it only by their marks; that President Monroe in 1818 again made the promise of an outlet which President Jefferson had made; that after these promises the United States claims to have parted with its sovereignty to the lands west of the 100th meridian west, in favor of Spain, so that when, in a treaty between the Cherokees and the United States made on May 6, 1828, 7 Stat. 311, the Cherokees were finally given an outlet to the west, the United States treated it as extending only to the 100th meridian, the asserted then western limit of its soil.

The Government made a motion before the Commission for summary judgment asserting that the issues raised by the petition had already been judicially determined and that the matter was, therefore, res adjudicata. The former adjudication to which the Government pointed was the decision of this Court in the case of Eastern or Emigrant Cherokees et al. v. United States, No. 42080 in this Court and reported in 88 Ct.Cl. 452. The Commission granted the Government's motion and dismissed the petition, all three members of the Commission concurring in the action of dismissal and agreeing that res adjudicata was the ground for the dismissal. We limit our discussion, therefore, to the question of whether that was a valid ground for dismissal.

The appellants urge that the claims which they seek to litigate in this case were not and could not have been litigated in the case formerly decided in this Court. The parties are the same, and the subject matter is the same since appellants are again seeking compensation for the same land for which they sought compensation in the former case. But, the appellants say, the law is different, the 1946 Act having given them rights which they did not have at the time of the former litigation. Section 2 of the Act, 25 U.S.C.A. 70a, in its Clauses (3) and (5) does give the Commission juris-

---

Alaska: (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and Executive orders of the President; (2) all other claims in law or equity, including those sounding in tort, with respect to which the claimant would have been entitled to sue in a court of the United States if the United States was subject to suit; (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, or any other ground cognizable by a court of equity;

(4) claims arising from the taking by the United States, whether as the result of a treaty of cession or otherwise, of lands owned or occupied by the claimant without the payment for such lands of compensation agreed to by the claimant; and (5) claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity. No claim accruing after August 13, 1946, shall be considered by the Commission.

"All claims under this chapter may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but all other defenses shall be available to the United States."

diction of claims which would not be recognized under the usual doctrines of law and equity. The provision of Clause (3) permitting recovery upon "claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, or any other ground cognizable by a court of equity", and that of Clause (5) permitting recovery upon "claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity" change the law and, if the facts warrant it, permit recovery in cases where no recovery could have been had under the former law.

As to the provisions of Clause (3) perhaps contracts between private parties could, under ordinary rules of equity, be revised or reformed and enforced as reformed in all the situations mentioned in Clause 3 except that of unilateral mistake. The appellant's petition before the Commission in effect alleges such a mistake on the part of the appellants when it speaks in paragraph 14 of the appellants' noticing the omission from the 1817 treaty of the provision for an outlet, after the treaty had been signed. In that respect, then, the appellants are in this litigation asserting rights which did not exist under the former law. Furthermore, the law under which the former case in this Court was decided did not give this Court any power to revise or reform a treaty upon any ground. In the case of the United States v. Choctaw and Chickasaw Nations, 179 U. S. 494, 21 S.Ct. 149, 45 L.Ed. 291, the Supreme Court reversed the judgment of this Court which is reported in 34 Ct.Cl. 17, on the ground that this Court had, in effect, revised a treaty between the United States and the Indians, 14 Stat. 769, to make it conform to the intention of the parties, where that intention was not consistent with the words of the treaty. The Supreme Court, at pages 531 and 532 of its opinion in 179 U.S. at pages 163, 164 of 21 S.Ct., recognized that treaties between the United States and the Indians should be interpreted favorably to the Indians, but then said, 179

U.S. 494, at pages 532, 533, 21 S.Ct. at page 164: "But in no case has it been adjudged that the courts could by mere interpretation or in deference to its [sic] view as to what was right under all the circumstances, incorporate into an Indian treaty something that was inconsistent with the clear import of its words. It has never been held that the obvious, palpable meaning of the words of an Indian treaty may be disregarded because, in the opinion of the court, that meaning may in a particular transaction work what it would regard as injustice to the Indians. That would be an intrusion upon the domain committed by the Constitution to the political departments of the government. Congress did not intend, when passing the act under which this litigation was inaugurated, to invest the court of claims or this court with authority to determine whether the United States had, in its treaty with the Indians, violated the principles of fair dealing. * * *"

The Court further said, 179 U.S. at page 535, 21 S.Ct. at page 165: "* * * It is thus clear that the court of claims was without authority to determine the rights of parties upon the ground of mere justice or fairness, much less, under the guise of interpretation, to depart from the plain import of the words of the treaty. Its duty was to ascertain the intent of the parties according to the established rules for the interpretation of treaties. Those rules, it is true, permit the relations between Indians and the United States to be taken into consideration. But if the words used in the treaty of 1866, reasonably interpreted, import beyond question an absolute, unconditional cession of the lands in question to the United States free from any trust, then the court cannot amend the treaty or refuse to carry out the intent of the parties, as gathered from the words used, merely because one party to it held the relation of an inferior and was politically dependent upon the other, or because in the judgment of the court the Indians may have been overreached. To hold otherwise would be practically to recognize an authority in the courts, not only to reform or correct treaties, but to determine questions of mere policy in the treatment of the In-

984

dians which it is the function alone of the legislative branch of the Government to determine."

In the former case in this court, relied on by the Government as having adjudicated the claim here asserted, the Act of Congress 47 Stat. 137, conferring jurisdiction on this Court contained substantially the same language as the comparable Act involved in the Choctaw and Chickasaw case, supra, which is quoted at page 498 of 179 U.S., at page 151 of 21 S.Ct. It, so far as here pertinent, gave authority to this Court to hear and adjudicate "all legal and equitable claims arising or growing out of any treaty or agreement between the United States and the Cherokee Indians" * * *, 88 Ct.Cl. at page 453. The Supreme Court's decision in the Choctaw and Chickasaw case, supra, prevented this Court from awarding to the Cherokees any right not based upon the language of their treaty, liberally interpreted. By no process of liberal interpretation could a provision for an outlet to the west, which was not mentioned in the treaty, be incorporated into the treaty, no matter what may have been the reason for its omission. Hence, at the time of the former adjudication, the Court had no power to render a judgment based upon the omission of a provision from a treaty which provision the Indians thought was contained in it. The jurisdictional act which was the only basis of the Court's power did not, as interpreted by the Supreme Court in the Choctaw and Chickasaw case, supra, give the Court jurisdiction to decide the question of whether or not there had been an omission from the treaty as written. The Court's decision of the case could not, therefore, have rendered that question res adjudicata.

What we have said would be applicable whether or not the Court, in the former case, intended to decide the question. But our examination of the Court's language persuades us that it was quite aware that it had no such power, and hence did not intend to decide it. The appellants, plaintiffs in that case, sought to have the Court, in the guise of interpreting the treaty, in effect read into it the omitted language. See plaintiffs' request for findings of fact, etc., in Case No. 42080, filed February 7, 1938. But, under the Supreme Court's decision in the Choctaw and Chickasaw case, supra, that could not be done, and we find nothing in this Court's decision in the former case to indicate that it decided anything more, which is here pertinent, than that the treaty of 1817 did not, as written, give the Cherokees an enforceable claim to the outlet for which they were suing.

Our conclusion is that our former decision in our case No. 42080, 88 Ct.Cl. 452, did not adjudicate such claims as were created by the Act of 1946, supra, and did not exist at the time of the decision of our No. 42080. We have stated in this opinion what those claims are. The granting of the Government's motion for summary judgment was, therefore, erroneous. The decision of the Indian Claims Commission is reversed, and the case is remanded to the Commission for further proceedings not inconsistent with this opinion.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.