WESTERN (OLD SETTLER) CHEROKEE INDIANS ex rel. OWEN et al. v. UNITED STATES.

EASTERN (EMIGRANT) CHEROKEE INDIANS ex rel. NASH et al. v. UNITED STATES.

Appeals Nos. 2, 3.

United States Court of Claims.

May 1, 1950.

See also 86 F.Supp. 981.

Woodson E. Norvell, Tulsa, Okl., for the appellants. Messrs. Houston B. Tehee, Earl Boyd Pierce, Muskogee, Okl., Dennis Bushyhead, Tulsa, Okl., and George E. Norvell, Washington, D. C., were on the briefs.

Ralph A. Barney, Oklahoma City, Okl., with whom was Assistant Attorney General A. Devitt Vanech, for the appellee. Jules H. Sigal, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

These appeals from the Indian Claims Commission present the question of whether the Commission was correct in sustaining the defense of *res adjudicata,* interposed by appellee in a motion for summary judgment, to the claims of appellants for additional interest on treaty funds presented in their petitions duly filed with the Commission, under the Act of August 13, 1946. 60 Stat. 1049, 25 U.S.C.A. § 70a.

The claims made in these petitions were based primarily upon the allegation that in computing the interest due the appellants upon principal sums determined to be due from the Government, under certain treaties, the United States had failed to deal fairly and honorably with the appellants with respect to the observance of the rule of partial payments made on account of indebtedness created by the treaties of 1835 and 1846, within the meaning of clause (5) of Section 2 of the Indian Claims Commission Act, supra. This provision confers upon the Commission jurisdiction to hear and determine "claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity." 25 U.S.C.A. § 70a.

The amended petition of the Western (Old Settler) Cherokee Indians (Appeal No. 2) alleges, in substance, that pursuant to the terms of the Treaty of 1846, 9 Stat. 871, between the Cherokee Nation of Indians and the United States, the latter became obligated to disburse, *per capita,* to the Western Cherokees, at an early date, the sum of $745,273.84, being the remainder of the Western Cherokees' share of the purchase price of the lands east of the Mississippi River, after the deductions therefrom authorized by the treaty; that on September 6, 1850, said money had not been disbursed, *per capita,* as required by the treaty, and that on that date the Senate of the United States under article XI of the Treaty of 1846, 9 Stat. 871, adopted a resolution that interest at the rate of 5 percent per annum should be allowed upon the sums found to be due the Eastern and Western Cherokees, respectively, from June 12, 1838, until paid.

The petition further alleges that from the year 1851 to 1899 certain payments were made by the United States on account of said indebtedness but that in no instance was the rule and principle of partial payments observed, that is, application of such payments, first, to the discharge of accumulated interest and the balance thereof to the reduction of the principal and, that as a result of the Government's failure to observe this rule of partial payments in computing and paying interest on the principal sum due, the Cherokees have sustained a loss with respect to the principal and interest of approximately $2,000,000.

The amended petition of the Eastern (Emigrant) Cherokee Indians (Appeal No. 3) alleges, in substance, that under treaty of 1835, 7 Stat. 478, as amended by the Treaty of 1846, 9 Stat. 871, the Cherokee Nation ceded to the United States their lands east of the Mississippi River for the sum of $5,000,000; that $350,000 of that amount was to be invested by the Government for the Indians and the net income therefrom paid annually for the support of certain of the Cherokee institutions; that, also, from said sum certain deductions were

to be made, as specified in said treaty, and that the balance of said $5,000,000 was to be paid, *per capita*, to said Indians.

The petition further alleges that as of June 12, 1838, $2,067,539.14 of the principal sum of $5,000,000 was in the hands of the United States which should have been disbursed, *per capita*, prior to that date; that at and prior to the execution of the Treaty of 1846, the Cherokees had consistently contended that they were entitled to receive interest on large sums of money held by the United States in trust for them in the Treasury; that by article XI of the Treaty of 1846 the question "whether the Cherokee nation shall be allowed interest on whatever sum may be found to be due the nation, and from what date and at what rate per annum," was submitted to the Senate of the United States for decision; that pursuant to such treaty provision the Senate, on September 6, 1850, adopted a resolution which provided: *"Resolved,* That it is the sense of the Senate that interest at the rate of five per cent per annum should be allowed upon the sums found due the Eastern and Western Cherokees, respectively, from the twelfth day of June, eighteen hundred and thirty-eight, until paid."

The petition further alleges that, from the year 1852 to 1910, certain payments were made by the United States on account of said indebtedness but that in no instance was the rule and principle of partial payments observed in connection with the computation and payment of interest thereon, and that as a result of the Government's failure to observe the rule of partial payments the Cherokees have sustained a loss with respect to principal and interest of approximately $4,500,000.

The detailed facts as to amounts and dates of payments, by appellee, on account of principal and interest and the basis on which appellants seek to recover additional sums as principal and interest under the rule of partial payments now contended for, are set forth in the opinion of the Indian Claims Commission in each of the cases and also in the findings of this court in the case of Western or Old Settler Cherokees v. United States, 82 Ct.Cl. 566, and in the case of Eastern or Emigrant Cherokee Indians v. United States, 82 Ct.Cl. 180, and need not be repeated here.

Section 2, of the Indian Claims Commission Act of August 13, 1946, supra, defining the jurisdiction of the Commission, contains the provision that "All claims under this chapter may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but all other defenses shall be available to the United States." Under this provision the appellee filed with the Indian Claims Commission, in each case, a motion for a summary judgment. In these motions the government asked that the amended petitions be dismissed "on the ground that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law in that the issues contained in the petition have been heretofore judicially determined and the matter is *res judicata* by reason of former decisions of the Court of Claims and the Supreme Court of the United States." The Indian Claims Commission sustained the motions and dismissed the amended petitions.

For the reasons hereafter stated, we are of the opinion that the decisions of the Commission dismissing the petitions were correct.

This Court and the Supreme Court have heretofore considered and decided the matter of interest due appellants under the Treaty of August 6, 1846, and the resolution of the Senate which became a part of article XI of that treaty, allowing interest at the rate of 5 percent per annum on the principal sums on which they now claim interest in the petitions filed with the Indian Claims Commission. However, the appellants now assert that they should have interest on the basis of the rule and principle of partial payments by first applying payments made to the discharge of accumulated interest, and applying only sums in excess thereof to the reduction of the principal debt.

In Western Cherokee Indians v. United States, decided in November 1891, 27 Ct. Cl. 1, this court, in finding VII, page 6, and in the opinion at page 7, stated the account between the Cherokee Nation and the United States, showing a residuum of

$2,273,608.76 to be divided between the Western and Eastern Cherokees on the basis of one-third and two-thirds. The court found that the amount due the Western Cherokees was $757,869.58; that on September 22, 1851, there had been paid on this account, under the act of Congress of September 30, 1850, 9 Stat. 556, $532,806.90 together with interest of $354,583.25, computed at 5 percent per annum from June 12, 1838, to the date of payment, leaving a balance due the Western Cherokees of $224,972.68 on the principal indebtedness on which the Indians were entitled to interest at the rate of 5 percent per annum from June 12, 1838, until paid. After thus stating the account, the court said, 27 Ct.Cl. at pages 47–49:

"And this brings us to the largest and most important subdivision of the suit, the claim for interest. * * *

"The fourth article of the treaty 1846 declares that the Western Cherokees then had 'an equitable claim upon the United States' for the value of their interest in the lands east of the Mississippi which had been sold to the United States, and that 'the value of that interest' should be ascertained by a method then prescribed, and that when ascertained the price should 'be distributed *per capita* to each individual' of the Western Cherokees, in consideration of which the Western Cherokees 'hereby release and quitclaim to the United States all right, title, interest, or claim they may have to a common property in the Cherokee lands east of the Mississippi river, and to exclusive ownership to the lands ceded to them by the treaty of 1833 west of the Mississippi.' But this article, which fixes the price of the purchase and the terms of the sale, is silent on the subject of interest.

"The eleventh article then comes into the agreement and modifies the fourth. It declares that 'the question whether the Cherokee Nation shall be allowed interest on whatever sum may be found to be due the nation, and from what date and at what rate per annum,' 'shall be submitted to the Senate of the United States.' The Senate acted under this authority of the eleventh article, and made its award in the form of the following resolve: * * *

"Immediately after this decision of the Senate, and in conformity thereto, Congress passed the *Act 30th September,* 1850 (9 Stat. L., p. 556), appropriating for distribution among the Western Cherokees $887,480.15, of which $532,896.90 was for money due to them under the treaty 1846 and $354,583.25 was for interest thereon.

"We have, then, this demand for interest, not arising after the execution of the instrument and the performance of the contract, but existing before the treaty was signed, and forming a subject of difference *ab initio* while the negotiations were carried on; we have this subject of difference provided for in the treaty itself and determined in the manner provided; we have the determination accepted as valid and binding by the party against whom it was made, and carried into effect by the payment of the money; finally we have the jurisdictional act directing the court 'to try and determine all questions that may arise in such cause on behalf of either party thereto and render final judgment thereon,' and declaring it to be 'the intention of this act to allow the said Court of Claims unrestricted latitude in adjusting and determining the said claim.'

"The court is therefore constrained to decide that by the force of the treaty which made the compact between the parties, and of the statute by virtue of which the controversy with all matters of difference between the parties is now being brought to a final determination, the Western Cherokees should recover interest at the rate of 5 per cent upon the unpaid balance of the treaty fund ($224,972.68) from the 12th day of June, 1838, to the day of the rendering of this decision, being for fifty-three years, five months, and eighteen days, and amounting to $601,426.70."

Both parties appealed, United States v. Old Settlers and Old Settlers v. United States, 148 U.S. 427, 13 S.Ct. 650, 37 L.Ed. 509. The Supreme Court, 148 U.S. at pages 477–478, 13 S.Ct. 670, modified the decision of this court as to the balance due the Western Cherokees, finding such bal-

ance to be $212,376.94 instead of $224,972.-68. With respect to the interest due under article XI of the Treaty of 1846 and the resolution of the Senate, the Court, 148 U.S. at page 478, 13 S.Ct. at page 671, said:

"Under section 1091 of the Revised Statutes no interest can 'be allowed on any claim up to the time of the rendition of judgment thereon by the court of claims unless upon a contract expressly stipulating for the payment of interest;' and in Tillson v. United States, 100 U.S. 43 [25 L.Ed. 543], it was held that a recovery of interest was not authorized under a private act referring to the court of claims a claim founded upon a contract with the United States, which did not expressly authorize such recovery. But in this case the demand of interest formed a subject of difference while the negotiations were being carried on, the determination of which was provided for in the treaty itself. That determination was arrived at as prescribed, was accepted as valid and binding by the United States, and was carried into effect by the payment of $532,896.90, found due, and of $354,583.25 for interest. 9 Stat. 556, c. 91.

"In view of the terms of the jurisdictional act and the conclusion reached in reference to the amount due, it appears to us that the decision of the Senate in respect of interest is controlling, and that, therefore, interest must be allowed from June 12, 1838, upon the balance we have heretofore indicated, but not upon the item of $4,179.-26, which stands upon different ground."

The next case in which the matter of interest was considered and adjudicated on sums claimed to be due to the Cherokee Nation, which included both the Eastern and Western Cherokees, appellants herein, was the case of the Cherokee Nation v. United States, 40 Ct.Cl. 252. This suit was brought pursuant to section 68 of an act of Congress of July 1, 1902, 32 Stat. 716, 726, for an accounting for moneys claimed to be due pursuant to article 2 of an agreement of December 19, 1891, ratified by Congress in Section 10, Act of March 3, 1893, 27 Stat. 612, 640, between the United States and the Cherokee Nation, under various treaties, including the Treaty of August 6, 1846, which gave rise to the right of the appellants to the interest on sums involved in these appeals.

In that case this court reviewed the prior litigation as to the sums found to be due to the Western Cherokees and the Eastern Cherokees and the matter of interest due thereon, under article XI of the Treaty of 1846 and the resolution of the Senate, and concluded, among other things, that there was due to the Cherokee Nation a further sum of $1,111,284.70, together with interest thereon at the rate of 5 percent per annum from June 12, 1838, until paid, pursuant to said article XI of the Treaty of 1846 and the resolution of the Senate thereunder, relating to interest. Both parties appealed, and the Supreme Court in United States v. Cherokee Nation (Cherokee Nation v. United States), 202 U.S. 101, 26 S.Ct. 588, 50 L.Ed. 949, held that the question of whether interest should be allowed on this fund of $1,111,284.70 having been submitted, under article XI of the Treaty of 1846, to the Senate of the United States, and that body having by resolution found that interest should be allowed at 5 percent per annum from June 12, 1838, until paid, the amount of interest was one of the subjects of difference referred to the Court of Claims under the jurisdictional act of July 1, 1902, and this court had jurisdiction to allow interest. The Supreme Court further held that this court had correctly awarded interest at the rate, and from the time specified, in the Senate resolution adopted under said article XI of the Treaty of 1846. The Court further held that the matter of interest in the case then under consideration was the same in principle as in the case of the Western Cherokee Indians v. United States, 27 Ct.Cl. 1. The interest awarded in these cases was paid in accordance with the opinions of this court and of the Supreme Court.

█ From what has been said it seems clear that the matter of interest due appellants on the sums determined to be due them, in the cases referred to, was a claim provided for and arising under the treaties involved and was within the jurisdiction of this court to determine under the jurisdictional acts, under which the suits were brought, on whatever basis or principle

such interest should have been computed and determined. It is likewise clear from a reading of the findings and opinions of this court and of the Supreme Court that the basis on which interest was to be computed and paid, under the terms of article XI of the Treaty of 1846 and the Senate Resolution, was considered, decided, and adjudicated. It is true that some of the interest found to be due the appellants, on portions of the total sums determined to be due, was paid after the judgments therefor were entered but the courts specifically approved the basis on which interest had been allowed, and paid, on payments previously made on account of the principal sum finally determined to be due both the Western and Eastern Cherokees.

This view of the claim for interest by appellants on the basis on which they now assert the right to have the interest computed and paid, was approved by this court in the cases of the Eastern or Emigrant Cherokees v. United States, 82 Ct.Cl. 180; and Cherokee Nation v. United States, and Western Cherokees or Old Settler Indians, Intervenors, 82 Ct.Cl. 456. See also Cherokee Nation v. United States, 59 Ct.Cl. 862, affirmed 270 U.S. 476, 46 S.Ct. 428, 70 L. Ed. 694. In the case last cited, suit was brought under a special jurisdictional act of March 3, 1919, 40 Stat. 1316, and the Supreme Court said, 270 U.S. at page 486, 46 S.Ct. at page 432: " * * * The judgment of this court in the suit by the Cherokee Nation against the United States in April, 1906, 202 U.S. 101, 26 S.Ct. 588, 50 L.Ed. 949, already referred to, awarded a large amount of interest. The question of interest was considered and decided, and it is quite clear that, but for the special act of 1919, above quoted, the question here mooted would have been foreclosed as *res judicata*. In passing the act, Congress must have been well advised of this, and the only possible construction therefore to be put upon it is that Congress has therein expressed its desire, so far as the question of interest is concerned, to waive the effect of the judgment as *res judicata,* and to direct the Court of Claims to re-examine it and determine whether the interest therein allowed was all that should have been allowed, or whether it should be found to be as now claimed by the Cherokee Nation. * * *"

The Court denied the claim for interest made in that case and, 270 U.S. at page 490, 46 S.Ct. at page 433, 70 L.Ed. 694, said: "What the appellant here seeks is compound interest; that is, interest on interest from 1895 until now. The general rule, even as between private persons, is that, in the absence of a contract therefor or some statute, compound interest is not allowed to be computed upon a debt. * * * In view of the care with which Congress and this court in interpretation of the legislative will, have limited the collection of simple interest against the government, *a fortiori* must compound interest be denied to appellant, unless provision therefor is made in the contract of 1891, or in the statute of 1919 authorizing this suit, and it is to be found in neither."

What the appellants are now asking is that notwithstanding these prior decisions with reference to the matter of interest, the Indian Claims Commission should permit them to open up the question of interest and again consider their agreements with the Government with reference thereto, and allow appellants a greater amount of interest on a basis or theory different from that on which the matter of interest was litigated and allowed in the prior cases, under the terms of the Treaty of 1846. The appellants contend, in effect, that the Indian Claims Commission has authority to do this under clause (5) of section 2 of the Act of August 13, 1946, 25 U.S.C.A. § 70a, which directs the Commission to hear and determine "claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity", for the reason that the claims which they now seek to litigate were not and could not have been decided on the merits in the cases of Eastern or Emigrant Cherokees v. United States, 82 Ct.Cl. 180, and Western or Old Settler Cherokees v. United States, 82 Ct.Cl. 566.

We cannot agree. This contention overlooks the effect of prior decisions on the question of interest. What this court de-

-cided in the cases last mentioned, which involved claims by these appellants for the recovery of additional interest based upon the failure of the Government, when making payments, to apply the rule of partial payments, was that the right of the Eastern and Western Cherokees to interest on sums theretofore determined to be due them from the Government, was a claim arising under and growing out of the Treaty of August 6, 1846; that such claim to interest was one within the jurisdiction of this court to determine in the prior cases, and that it had been considered and adjudicated on the merits in such cases. It was, therefore, held that the matter of interest was *res adjudicata* under the prior decisions hereinbefore referred to.

The same conclusion must be reached here. A study of the history of the Act of August 13, 1946, supra, particularly of Section 2, defining the jurisdiction of the Indian Claims Commission and enumerating the types of claims which the Commission should hear and determine, shows that it was not the intention of the Act to permit Indian tribes or bands or identifiable groups of Indians, to re-litigate before the Commission any claim with respect to which such tribes, bands or groups, had had their day in court.[1] We think it is clear that appellants have heretofore had their day in court upon their claims for interest on the principal sums on which they now seek to recover additional interest in these proceedings before the Indian Claims Commission. In addition, we think it is clear from the history of the Act of 1946 that Congress did not intend to confer upon the Commission jurisdiction to permit claims, such as are here involved, to be re-litigated under clause (5) of Section 2 on the basis of fair and honorable dealings. Clause (5) obviously has refer-

ence to the fundamental character of the claim rather than to the theory on which an Indian tribe or band may seek to invoke the jurisdiction of the Indian Claims Commission. Cf. Sioux Tribe of Indians v. United States, 78 F.Supp. 787, 112 Ct. Cl. 39, 45, 46; Sioux Tribe of Indians v. United States, 78 F.Supp. 793, 112 Ct.Cl. 50, 57. If the claims made by appellants in these cases could be again heard and determined by the Indian Claims Commission, it would be difficult to imagine a claim, even though previously considered and decided on the merits by this court, which could not be relitigated before the Commission merely by basing the claimed right of recovery on the provision of clause (5), supra. Clause (5) was intended, as its language clearly shows, when considered in the light of its history and other provisions of Section 2, to cover only moral claims based on justice and fair dealings or broad principles of equity and justice, with respect to which no court had theretofore made a determination on the merits, or could have made such a determination under the terms of prior jurisdictional acts. See Western (Old Settler) Cherokee Indians et al. v. United States, 86 F.Supp. 981, 114 Ct.Cl. 716.

Except for the provisions of article XI of the Treaty of August 6, 1846, and the resolution of the Senate thereunder, allowing interest at the rate of 5 percent per annum on the principal sums determined to be due under treaties, agreements or acts of Congress, these appellants would never have had a valid claim for interest, either as a claim legal or equitable or a claim based upon "fair and honorable dealings," in view of the provisions of other statutes prohibiting the allowance of interest against the United States. Western Cherokee Indians v. United States, supra;

[1]. Hearings before the Committee on Indian Affairs, House of Representatives, 79th Cong., 1st sess., March 2, 3, and 28, and June 11 and 14, 1945, on H.R.1198 and H.R.1341; Hearings before the Senate Committee on Indian Affairs on H. R.4497, 79th Cong., 2d sess., June 1 and 12, and July 13, 1946. House Rept.No. 1466, Dec. 20, 1945, Committee on Indian Affairs, on H.R.4497, 79th Cong., 2d sess.; Cong.Rec. May 20, 1946, pp. 5408–5410. Senate Rept.No.1715, July 15, 1946, Committee on Indian Affairs on H.R.4497; Cong.Rec. July 17, 1946, pp. 9343–9344. House Conf.Rept.No.2693, July 27, 1946, on H.R.4497 (79th Cong., 2d sess.); Cong.Rec., July 27, 1946, pp. 10452–10454; Cong.Rec.Appendix Aug. 12, 1946, pp. A5211, A5212.

United States v. Old Settlers, 148 U.S. 427, 478, 13 S.Ct. 650, 37 L.Ed. 509; Cherokee Nation v. United States, 270 U.S. 476, 490, 46 S.Ct. 428, 70 L.Ed. 694. The claims of appellants are, therefore, foreclosed as res adjudicata.

We are of opinion that the Indian Claims Commission rightly held that it had no jurisdiction to hear and determine these claims under any provisions of Section 2 of the Act of August 13, 1946.

The decisions of the Commission sustaining the motions of the United States for summary judgment are therefore affirmed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.