**The CHICKASAW NATION**

**v.**

**The UNITED STATES.**

Appeals Docket No. 1-55.

United States Court of Claims.
June 7, 1955.

Kirlin, Campbell & Keating, New York City, for libelant.

J. Edward Lumbard, U. S. Atty., New York City, for respondent.

Paul M. Niebell, Washington, D. C., for appellant.

Frederick C. Ward, Jr., Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for appellee.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The appellant sued the appellee, the United States, before the Indian Claims Commission. The appellee made a motion for summary judgment, which the Commission granted. The Commission granted the motion for summary judgment because it concluded, by a majority vote, Chief Commissioner Witt dissenting, that the appellant's claim was *res adjudicata,* it having been decided by the Supreme Court of the United States in Choctaw Nation v. United States, 318 U.S. 423, 63 S.Ct. 672, 87 L.Ed. 877, reversing this court's decision in Chickasaw Nation v. United States and Choctaw Nation, 95 Ct.Cl. 192.

The appellant's suit before the Commission was for $190,000, the alleged value of a one-fourth interest in 266,-435.13 acres of land which had been owned jointly by the Choctaw and Chickasaw, their interests being three-fourths and one-fourth respectively. Pursuant to treaties and agreements, the land was allotted to the Choctaw freedmen, the former slaves of the Choctaws. Since the Chickasaw were under no obligation to provide for the Choctaw freedmen, they have persistently asserted that they should be paid for their interest in the land which was taken to provide for these freedmen.

The history of this running controversy is given in our decision in Chickasaw Nation v. United States, 95 Ct.Cl. 192, supra, and will not be repeated here. By the Atoka agreement, made in 1898, between the United States and the Choctaw and Chickasaw, it was provided that the freedmen of each nation should each receive a 40-acre allotment from the land of that nation. A supplemental agreement was made in 1902, which modified the Atoka agreement in several respects. It had no express provision requiring the Choctaw to provide for their own freedmen out of their own lands. It took notice of the Chickasaw claim that their freedmen had no rights against the tribe, pursuant to the treaty of 1866 and subsequent legislation. It conferred jurisdiction upon this court to determine whether the Chickasaw freedmen had such rights. This court determined that they did not have such rights. United States v. Choctaw Nation, 38 Ct.Cl. 558, affirmed sub. nom. Chickasaw Freedmen v. Choctaw Nation, 193 U.S. 115, 24 S.Ct. 411, 48 L.Ed. 640. This court ultimately rendered a judgment for $606,936.08 in favor of the two tribes, as compensation for the tribal lands allotted to the Chickasaw freedmen.

Prior to the entry of judgment in that suit, the Choctaw filed an "Application for Additional Decree" stating that the Chickasaw were entitled to be paid for their one-fourth interest in the commonly owned lands allotted to the Choctaw freedmen and requesting this court to so modify the judgment. This court did not modify the judgment, apparently because it had no authority to do so under the special jurisdictional act under which the suit was brought.

On June 7, 1924, 43 Stat. 537, Congress passed an act authorizing the Chickasaw Nation to sue in this court for their one-fourth interest in the land allotted to the Choctaw freedmen. That suit resulted in our decision in Chickasaw Nation v. U. S., 95 Ct.Cl. 192, and the Supreme Court's decision in Choctaw Nation of Indians v. U. S., 318 U.S. 423, 63 S.Ct. 672, 87 L.Ed. 877, both referred to above. The Supreme Court's decision has now been held by the Indian Claims Commission to be a prior adjudication of the instant suit.

■ In this court, in the prior suit, we decided that the Supplemental Agreement of 1902, considered in the light of its history, and the circumstances of its making, contemplated that the Chickasaw should not contribute gratis one-fourth of the lands which the Choctaw were ob-

ligated to furnish to the Choctaw freedmen. We would not have had the temerity to rewrite or revise the 1902 agreement, to make of it a fairer agreement or one more nearly in accord with the subjective intentions of the representatives of the Chickasaw. We thought, however, that in view of the accepted rules of liberal construction applicable to writings embodying agreements between the Government and its *quasi* wards, the Indian tribes, the words of the 1902 agreement, though "not well chosen" to express the meaning which we found, could bear that interpretation.

The Supreme Court took "a different view." It said:

"But even Indian treaties cannot be re-written or expanded beyond their clear terms to remedy a claimed injustice or to achieve the asserted understanding of the parties. Cf. United States v. Choctaw and Chickasaw Nations, 179 U.S. 494, 531–533, 21 S.Ct. 149, 163, 164, 45 L.Ed. 291; United States v. Mille Lac Chippewas, 229 U.S. 498, 500, 33 S.Ct. 811, 812, 57 L.Ed. 1299. Here the words of the proviso are inapposite to the proposed construction and we do not believe the findings are enough to warrant departing from the language used. The findings are merely findings as to evidence. There is no finding as to the ultimate fact whether or not the two tribes intended to agree on something different from that appearing on the face of the 1902 agreement. Without such a finding the agreement must be interpreted according to its unambiguous language. Furthermore, if we were to find the ultimate fact, we seriously doubt whether we could discover from these evidentiary findings what the agreement among the two tribes and the United States was, if other than that expressed in the 1902 agreement. For the most part the findings are concerned with the assertions and claims of the Chickasaws. The only indication that the Choc-

taws ever shared those views at any time is their request for an 'Additional Decree' upon which no action was ever taken." 318 U.S. 432, 63 S.Ct. 678.

In the instant suit before the Indian Claims Commission, the appellant alleges, among other things, that in connection with the writing of the Atoka agreement and the supplementary agreement of 1902 the language employed misled the appellant; that there was a unilateral mistake on the part of the appellant as to the meaning of the agreements; and that the transactions were a departure from "fair and honorable dealing" on the part of the Government. By section 2, clauses 3 and 5 of the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049, 25 U.S.C.A. §§ 70 et seq., 70a, 70b, 70d, the facts so alleged are made valid grounds for a claim.

From the Supreme Court's language quoted above, it is evident that the Supreme Court did not decide anything regarding the validity of these grounds for a claim, since they were not, at that time, grounds for a claim. If we are to give effect to the purposes of the Indian Claims Commission Act, we cannot hold that a former decision finally adjudicated and barred causes of action which were not in existence when the prior decision was made. The instant situation is fairly comparable to that involved in our decision in The Western (Old Settler) Cherokee Indians v. United States, 114 Ct.Cl. 716.

The appellee relies heavily upon our recent decision in Choctaw Nation v. United States, 128 Ct.Cl. 195, in which we held that the claim sued upon was barred by a prior decision of this court. The court said that in the prior decision it had examined and considered all the facts then before it relating to the intent and understanding of the parties, and had concluded that the agreement, as carried out, was in accord with that intent and understanding. The court had, pursuant to the principles of liberal interpretation of agreements, in favor of Indians, received all the evidence offered

as to the intent and understanding of the Indians. That being the case, the second litigation, if permissible, would have in-volved the same parties, the same facts, and the same law, as the prior case. It is of interest to note that the Indian Claims Commission in the Choctaw case, though sustaining the Government's plea of *res adjudicata*, also decided the case on the merits and reached the same conclusion which this court had reached.

The Indian Claims Commission's decision granting the appellee's motion for summary judgment was erroneous. It is therefore reversed and the case is remanded to the Commission for further proceedings not inconsistent with this opinion.

It is so ordered.